PRATHER, Presiding Justice,
for the Court:

ON PETITION FOR POST-CONVICTION RELIEF

I. INTRODUCTION
The primary issue presented by this petition is whether an intervening decision by the United States Supreme Court should be applied retroactively to John B. Nixon Sr.’s final conviction for capital murder — a crime which arose out of a murder-for-hire conspiracy. Nixon’s trial commenced on March 24, 1986, and culminated in a verdict of guilty and sentence of death. No challenge was made in the trial court to the jury composition. Nixon appealed and raised a Batson[1] question, but this Court denied the Batson challenge and affirmed. See Nixon v. State, *753 533 So.2d 1078 (Miss.1987). The United States Supreme Court subsequently denied Nixon’s petition for a writ of certiorari and Nixon’s conviction became final. Nixon v. Mississippi, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989).
Nixon then filed this petition for post-conviction relief (PCR), through which he presented numerous issues for analysis.[2]
II. ANALYSIS

A. Whether the State’s Discriminatory Abuse of Peremptory Challenyes Violated Nixon’s Constitutional Rights?

1.

Nixon raised this issue on direct appeal in Nixon v. State, 533 So.2d 1078, 1086 (Miss. 1987). In Nixon, this Court concluded that, because Nixon is white, he could not object to the exclusion of black jurors under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After Nixon’s direct appeal, the United States Supreme Court held that a criminal defendant may object to a prosecutor’s discriminatory use of peremptory challenges even though the defendant was not of the same race as the challenged juror. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Nixon asserts that the Powers decision is a new rale of federal constitutional law which applies retroactively to his post conviction review. This Court must now decide whether Nixon should be procedurally barred from raising the issue again or whether Nixon may avail himself of an intervening decision issued by the United States Supreme Court.

2.

The test for determining whether a prisoner may hurdle a procedural bar and retroactively apply an intervening decision to his case has become clouded over the years. Compare, e.g., Wiley v. State, 517 So.2d 1373, 1377 (Miss.1987), cert. den. 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 610 (1988), with Gilliard v. State, 614 So.2d 370, 372-73 (Miss.1992). The United States Supreme Court recently “clarified” its own clouded position on the matter in Teague v. Lane, 489 U.S. 288, 307-11, 109 S.Ct. 1060, 1069-75, 103 L.Ed.2d 334, 349-56 (1989). Teague, a decision concerning federal court review of state court convictions, sought to offer guidelines that would accommodate federal constitutional guarantees and offer comity to state judgments. As a matter of federal constitutional law, the United States Supreme Court held by a plurality vote that a new rule of constitutional law will not be applied retroactively to a case on habeas review unless it falls within one of two limited exceptions.[3] Teague, 489 U.S. at 311, 109 S.Ct. at 1075-76, 103 L.Ed.2d at 356 (1989); see Sawyer v. Smith, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (majority approving the plurality’s decision in Teague).
The distinction between applicability of new rules of constitutional law to cases on direct appeal and on collateral review basically embraces a healthy and necessary respect for final judgments and good-faith interpretations of existing law:
The principle announced in Teague serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered. This is but a recognition that the purpose of federal habeas corpus is to ensure that state convictions comply with the federal law in existence at the time the conviction became final, and not to provide a mechanism for the continuing reexamination of *754 final judgments based upon later emerging legal doctrine.
Sawyer, 497 U.S. at 234, 110 S.Ct. at 2827, 111 L.Ed.2d at 206.
This rationale is consistent with the principles of this State’s Post-Conviction Collateral Relief (“PCR”) Act. See Miss.Code Ann. § 99-39-3 et seq. (Supp.1992). Section 99-39-3 provides that a “[djireet appeal shall be the principal means of reviewing all criminal convictions and sentences, and the purpose of this chapter is to provide prisoners with a procedure, limited in nature, to review those objections, defenses, claims, questions, issues or errors which in practical reality could not be or should not have been raised at trial or on direct appeal.” If any effect is to be given to such legislative intent, the right of a prisoner to challenge his conviction based on subsequent changes in the law must be limited. However, our PCR Act has its own provisions regarding intervening decisions. See Miss.Code Ann. §§ 99-39-5(2)[4] and 99-39-27(9) (Supp.1993).[5]
Accordingly, in determining whether a prisoner may avail himself of an intervening decision, this Court applies our PCR act to determine whether an issue raised on PCR is one warranting relief from waiver based on cause and actual prejudice, as contemplated by 99-39-21(1),[6] or one not proce *755 durally barred, although litigated at trial and on direct appeal, because of the existence of cause and actual prejudice, as contemplated by § 99-39-21(2). Application of this test is based on state law grounds.[7] See Miss.Code Ann. §§ 99-39-3, 99-39-21(1), and 99-39-21(2) (Supp.1993).
Looking at the “cause” requirement, in the case sub judice, Nixon bases his assertion of cause on an intervening decision which espouses a new rule of law. Compare Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (holding that a white defendant can object to the exclusion of minority jurors through the use of peremptory challenges), with Batson v. Kentucky, 476 U.S. 79, 96, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986) (holding that a defendant may object to the exclusion of members of the defendant’s own race). Nixon failed to object to the jury composition during trial; the issue was raised on direct appeal under Bat-son; this Court denied the claim on the merits. Yet there was no indication in Bat-son that its guidelines would be changed, nor could its extension have been anticipated by Nixon for preservation of the issue at trial. This Court holds that Powers does espouse a new rule of law and that the showing of cause has been met by the intervening Powers decision.
As to the showing of “actual prejudice” required under our PCR act, reference to the Teague case will be of assistance to determine retroactivity of Nixon’s PCR claim. Nixon has to show prejudice by coming within one of the two Teague exceptions. The first Teague exception is not met in this case because “Application of the fair cross section requirement to the petit jury would not accord constitutional protection to any primary activity whatsoever.” Accord Teague, 489 U.S. at 311, 109 S.Ct. at 1075-76, 103 L.Ed.2d at 356. Stated differently, the new rule does not place a category of primary conduct beyond the reach of the criminal law nor does it prohibit punishment for a class of defendants. Teague, 489 U.S. at 311, 109 S.Ct. at 1075-76, 103 L.Ed.2d at 356. The second Teague exception affords Nixon no comfort because it is limited to those new procedures without which the likelihood of an accurate conviction is seriously diminished. Restated, “absence of a fair cross section on the jury venire does not undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction.” Id. at 315, 109 S.Ct. at 1078, 103 L.Ed.2d at 359. The Teague Court concluded that “a rule requiring that petit juries be composed of a fair cross section of the community would not be a ‘bedrock procedural element’ that would be retroactively applied under the second exception.” Teague, 489 U.S. at 315, 109 S.Ct. at 1078, 103 L.Ed.2d at 359.
On the basis of the foregoing, this Court holds that Nixon is not entitled to relief pursuant to Miss.Code Ann. § 99-39-21(1) (Supp.1993) nor pursuant to Miss.Code Ann. § 99-39-21(2) (Supp.1993), because there is no actual prejudice warranting relief from waiver on the procedural bar. This Court holds that the Powers decision should not be applied retroactively to Nixon’s final conviction as the Powers rule is not a prerequisite to fundamental fairness of the type that may come within the exception.

B. Whether the Cumulative Effect of Errors or “Near-Errors” Constituted a Violation of Nixon’s Right to a Fair Trial?

This Court is now asked to determine whether the cumulative effect of any discovered errors or “near-errors” constituted a violation of Nixon’s right to a fair trial. See, *756 e.g., Stringer v. State, 500 So.2d 928, 946 (Miss.1986) (death sentence vacated in view of numerous “near-errors” which violated defendant’s right to a fair trial). Nixon raised this issue on direct appeal. Nixon v. State, 533 So.2d 1078, 1102 (Miss.1987), cert. den. 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). This Court has again examined the record and determined that Nixon received a fair trial — albeit not a perfect one. See Sand v. State, 467 So.2d 907, 911 (Miss.1985) (“Although this defendant did not receive a perfect trial, it was a fair trial.”); see also Stringer, 500 So.2d at 947 (“There has never been a perfect trial.” (R.N. Lee, P.J., dissenting)).
In sum, this Court holds that the contention presented through this issue is devoid of merit.

C. Remaining Issues

A published analysis of the remaining issues is unwarranted because Nixon has waived his right to raise them at this time. See Miss.Code Ann. § 99-39-21 (Supp.1993).[8]
III. CONCLUSION
This Court re-affirms Nixon’s conviction and death sentence and denies his petition for post-conviction relief.
PETITION FOR POST-CONVICTION RELIEF DENIED.
HAWKINS, C.J., and SULLIVAN and BANKS, JJ., concur.
McRAE, J., concurs in results only.
BANKS, J., concurs in part and concurs in judgment with separate written opinion.
SMITH, J., concurs in part and dissents in part with separate written opinion joined by DAN M. LEE, P.J., and JAMES L. ROBERTS, Jr., J.
PITTMAN, J., not participating.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was handed down April 30, 1986. Nixon was tried one month earlier, on March 24, 1986.

. This Court stayed Nixon's execution, which had been set for January 17, 1990.

. The first exception regards new rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.” Id. The second exception' applies "to new 'watershed rules of criminal procedure’.” Id.; see Mackey v. United States, 401 U.S. 667, 693, 91 S.Ct. 1160, 28 L.Ed.2d 404, 421 (1971) (Harlan, J., concurring in part, dissenting in part). The Court further stated that "[a] new rule should be applied retroactively if it requires the observance of those procedures that ... are ‘implicit in the concept of ordered liberty.”" Teague 489 U.S. at 307, 109 S.Ct. at 1073.

. § 99-39-5. (2) A motion for relief under this chapter shall be made within three (3) years after the time in which the prisoner’s direct appeal is ruled upon by the supreme court of Mississippi or, in case no appeal is taken, within three (3) years after the time for taking an appeal from the judgment of conviction or sentence has expired, or in case of a guilty plea, within three (3) years after entry of judgment of conviction. Excepted from this three-year statute of limitations are those cases in which the prisoner can demonstrate either that there has been an intervening decision of the supreme court of either the state of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence. Likewise excepted are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.

. § 99-39-27. (9) The dismissal or denial of an application under this section is a final judgment and shall be a bar to a second or successive application under this chapter. Excepted from this prohibition is an application filed pursuant to section 99-19-57(2), Mississippi Code of 1972, raising the issue of convict’s supervening insanity prior to the execution of a sentence of death. A dismissal or denial of an application relating to insanity under section 99-19-57(2), Mississippi Code of 1972, shall be res judicata on the issue and shall likewise bar any second or successive applications on the issue. Likewise excepted from this prohibition are those cases in which the prisoner can demonstrate either that there has been an intervening decision of the supreme court or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence. Likewise exempted are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.

.§ 99-39-21. Procedural waiver of objections, defenses, claims; collateral estoppel, re judicata; burden of proof.
(1) Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.
(2) The litigation of a factual issue at trial and on direct appeal of a specific state or federal legal theory or theories shall constitute a waiver of all other state or federal legal theories which could have been raised under said factual issue; and any relief sought under this chapter upon said facts but upon different state or federal legal theories shall be procedurally barred absent a showing of cause and actual prejudice.
(3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.
(4) The term "cause” as used in this section shall be defined and limited to those cases where the legal foundation upon which the claim for relief is based could not have been discovered with reasonable diligence at the time of trial or direct appeal.
(5) The term "actual prejudice” as used in this section shall be defined and limited to those *755 errors which would have actually adversely affected the ultimate outcome of the conviction or sentence.

. Reference to the Teague test does not alter this Court’s confidence in the result of Gilliard v. State, 614 So.2d 370 (Miss.1992). The intervening decision in Gilliard was Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), which invalidated a jury instruction long-given in this State. However, the Supreme Court’s decision did not announce a new decision in Clemons for purposes of the Teague test; rather, it ”follow[ed], a fortion," from its previous decision in Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1990). Respect for finality of judgments had to yield to the necessity of correcting a decision erroneous at the time it was made, as was the case in Clemons v. State, 535 So.2d 1354 (Miss.1988).

. Section 99-39-21 provides in part that "[fjail-ure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the State of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred....” Moreover, the doctrine of res judicata "shall apply to all issues, both factual and legal, decided at trial or [on] direct appeal."