# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-DR-01290-SCT

*KEVIN SCOTT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/23/1998 |
| TRIAL JUDGE: | HON. KENNETH L. THOMAS |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES W. CRAIG |
| | JEANE A. THOMAS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | PETITION FOR POST-CONVICTION RELIEF IS GRANTED IN PART AND DENIED IN PART - 10/05/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

## PROCEDURAL HISTORY AND STATEMENT OF THE FACTS

¶1. Kevin Scott (Scott) and Leroy Lynch confronted seventy-four-year-old Richard Lee in the carport of his home. When Lee's wife, Lurline, heard voices, she opened the door of their home and shots were fired at her. She was able to slam the door and initiate a call to

the police. Lee was shot, and Scott fled the scene in Lee's car. Lee later died from his wounds. When he was caught, Scott confessed to the shooting, but he later recanted. Scott claimed that Lynch was the shooter, and he had fled in the car only after Lynch shot Lee.

¶2. Scott was charged with the capital murder of Lee, with the underlying felony of robbery. Scott was also charged with aggravated assault of Lurline. Scott was convicted of both charges and, after a separate sentencing hearing, was sentenced to death for the capital murder and ten years on the aggravated assault charge. This Court affirmed the conviction and sentence on direct appeal. *Scott v. State*, 878 So. 2d 933 (Miss. 2004). Scott now files this application for post-conviction relief in which he raises twelve claims for relief. We grant this application for post-conviction relief in part and deny it in part. The sole issue of whether Scott is mentally retardation is remanded to the trial court for an evidentiary hearing. All other issues raised by Scott on post-conviction relief are denied. Each issue raised by Scott is addressed.

## ANALYSIS

### I. Mental retardation

¶3. Scott argues that he is mentally retarded, and therefore, he should not be executed pursuant to *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002) and *Chase v. State*, 873 So. 2d 1013 (Miss. 2004). Scott asserts that he is entitled to a mental retardation evaluation by the trial court. Scott's application is lengthy on the mental retardation issue, citing problems at and from birth, a family history of mental illness, years

2

spent in special education, and numerous assessment and functioning tests. Scott includes two affidavits by experts, Dr. L. Mulry Tetlow and Dr. Marc Zimmerman, in his application on post-conviction relief which state that there is a reasonable basis to believe that upon further testing Scott would be found to be mentally retarded. Scott also includes affidavits from teachers, family, and friends on the subject of Scott's deficiencies in adaptive functioning. In December, 2005, Scott was granted leave for an evaluation by Dr. Zimmerman. After a battery of tests, Dr. Zimmerman opined that Scott is mentally retarded as that term is defined by the American Association of Mental Retardation (AAMR) and the Diagnostic and Statistical Manual, fourth edition (DSM-IV-TR).

¶4. On direct appeal, this Court found that there was insufficient evidence in the record to remand for a hearing on the issue of mental retardation, or a *Chase* hearing. *Chase v. State*, 873 So. 2d at 1028-29. In *Scott*, 878 So. 2d at 948, this Court explained how *Chase* applied in this case:

> In response to *Atkins*, we recently handed down *Chase v. State*, 873 So. 2d 1013, (Miss. 2004), in which we set forth the criteria and procedure to be used both in applying for, and conducting, a hearing for a determination of mental retardation. For criminal defendants who file applications for post-conviction relief subsequent to *Chase*, a defendant must provide "an affidavit from at least one expert . . . who opines, to a reasonable degree of certainty, that: (1) the defendant has a combined Intelligence Quotient ("IQ") of 75 or below, and; (2) in the opinion of the expert, there is a reasonable basis to believe that, upon further testing, the defendant will be found to be mentally retarded, as defined [in the *Chase* opinion]." *Id*.

*Scott,* 878 So. 2d at 948. In *Chase*, 873 So. 2d at 1029, this Court held:

With the sole exception discussed below, no defendant may be granted a hearing on the issue of Eighth Amendment protection from execution, due to alleged mental retardation unless, prior to the expiration of the deadline set by the trial court for filing motions, the defendant shall have filed with the trial court a motion, seeking such hearing. The defendant must attach to the motion an affidavit from at least one expert, qualified as described above, who opines, to a reasonable degree of certainty, that: (1) the defendant has a combined Intelligence Quotient ("IQ") of 75 or below, and; (2) in the opinion of the expert, there is a reasonable basis to believe that, upon further testing, the defendant will be found to be mentally retarded, as defined herein.

*Chase,* 873 So. 2d at 1029. However, applying *Chase* in Scott's direct appeal, this Court stated the following:

Thus, on the record before us, Scott has not established that he is entitled to an [sic] *Chase* hearing. However, should Scott provide the appropriate affidavit which complies with the requirements set forth in *Chase* as an attachment to an application for post conviction relief, pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1 et seq., he could be entitled to a hearing as provided in *Chase*.

*Scott,* 878 So. 2d at 948.

¶5.    The State counters that while Scott has now presented such affidavits, it disputes the findings and methods of Dr. Zimmerman and points out the Dr. Zimmerman failed to administer the Minnesota Multiphasic Personality Inventory II (MMPI-II). Scott argues that the MMPI-II is not an appropriate test for individuals with mental retardation. Scott also notes in his rebuttal that Dr. Zimmerman has explained why the MMPI-II test would be of "questionable value" because Scott is unable to read beyond a third-grade level. However, this Court has not disregarded the MMPI-II test. The MMPI-II test is required prior to an

4

adjudication on a claim of mental retardation pursuant to *Atkins* and *Chase*. *See Jordan*, 918 So. 2d at 660; *Chase*, 873 So. 2d at 1029.

¶6.     We find that Scott's post-conviction petition with its accompanying application provided the affidavits this Court deemed necessary to warrant a *Chase* hearing on the issue of mental retardation. Scott has provided the necessary information specified in *Chase* for a remand by this Court to the trial court for mental retardation hearing. However, prior to an adjudication on the mental retardation issue, Scott must obtain a MMPI-II test. Therefore, this issue should be remanded to the Bolivar County Circuit Court for a mental retardation hearing.

## II.     Prosecution's conflict of interest

¶7.     Brenda F. Mitchell, an assistant district attorney in Bolivar County, Mississippi, participated in Scott's prosecution.[1] Two and a half years prior to Scott's capital murder trial, Mitchell worked as an attorney at North Mississippi Rural Legal Services. While employed with Legal services, Mitchell represented Scott at a hearing before an administrative law judge at the Social Security Administration. At the time of the social security hearing, Scott was 15-years old. He was declared mentally retarded and mentally disabled and awarded supplemental security income.

---

[1] Scott alleges that Mitchell participated in the case from indictment in 1996, through the end of trial in October 1998. Her participation included, but was not limited to, responding to defense motions, submitting discovery disclosures, conducting direct examination of witnesses at trial and delivering closing argument.

¶8.     Scott asserts Mitchell's participation in his prosecution was an impermissible conflict of interest where the criminal prosecution was substantially related to the prior civil suit and where Mitchell used confidential information gained through her prior representation of Scott. **Gray v. State**, 469 So. 2d 1252, 1254 (Miss. 1985)**; Sharplin v. State**, 330 So. 2d 591, 594 (Miss. 1976).

¶9.     Scott asserts the social security proceedings concerned his mental capacity, which was a central issue at his murder trial. Scott claims that as his attorney in the social security proceedings, Mitchell had access to his confidential files, records, mental health evaluations, and medical reports, as well as, access to his mother, aunt, and other family members. Scott asserts Mitchell had an ongoing obligation to maintain the confidentiality of attorney-client privilege. Scott also points out that, as his advocate, Mitchell argued Scott suffered from mental retardation.

¶10.    Scott asserts that the State cannot show that Mitchell had absolutely no participation in the case, divulged no confidential information, and notified the defense promptly of this conflict.

¶11.    Scott argues this claim is properly raised for the first time in the petition for post-conviction relief where the conflict was first discovered by post-conviction counsel in April, 2005. Scott asserts the conflict entitles him to relief where this Court has ordered new trials in cases involving lesser sentences for such conflicts. *See* **Gray**, 469 So. 2d at 1255; **Sharplin**, 330 So.2d at 596; **Aldridge**, 583 So.2d 203 (Miss. 1991). *See also* **Wilkins v.**

6

***Bowersox***, 933 F. Supp. 1496 (W.D. Mo. 1996), *aff'd,* 145 F.3d 1006 (8th Cir. 1998). Lastly, Scott argues that the prosecution's failure to disclose this conflict is a violation of ***Brady v. Maryland***, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

¶12.  The State argues this issue is procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1) because it was not raised at trial or on direct appeal.  The State asserts, too, that failure to move for Mitchell's disqualification acts as waiver.  The State notes there was testimony at trial regarding Scott's testing for social security disability and argues Scott's assertion that Mitchell's involvement in the Social Security Administration proceeding is newly discovered is incredible.[2]

¶13.   The State argues that Scott has failed to show a substantial relationship between the two representations and has failed to show disclosure of confidential information.  The State also points out that, at the time of Scott's prosecution, ***Atkins v. Virginia***, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002), had not been decided.  As such, neither Mitchell nor the district attorney had any reason not to seek the death penalty based on mental retardation.

¶14.  Miss. Code Ann. Section 99-39-21(1) provides:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute

---

[2] Scott points out in his rebuttal that while the 1992 Region One Mental Health Center report was a part of the evidence at trial, Mitchell's representation of Scott (documents related to the SSA proceedings) were not part of the record at trial.

7

a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

The record reflects that Scott did not raise this issue on his direct appeal and is now procedurally barred pursuant to Miss. Code Ann. Section 99-39-21(1). That being said, we will now examine the merits of the case.

¶15. In *Carr v. State*, 873 So. 2d 991, 997 (Miss. 2004), this Court held:

> The purpose of post-conviction proceedings is to bring forward facts to the trial court that were not known at the time of the judgment. *Williams v. State*, 669 So. 2d 44, 52 (Miss. 1996). The procedure is limited to those facts and matters which could not or should not have been brought at trial or on direct appeal. *Id*.; Miss. Code Ann. §§ 99-39-1 to -29 (Rev. 2000 & Supp. 2003). If newly discovered evidence would likely produce a different result or verdict and the proponent shows that the evidence was "discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching" then such evidence warrants a new trial. *Ormond v. State*, 599 So. 2d 951, 962 (Miss. 1992).

¶16. Further, in *Carr*, this Court held:

> To succeed on a motion for a new trial based on newly discovered evidence, the petitioner must prove that new evidence has been discovered since the close of trial and that it could not have been discovered through due diligence before the trial began. *Meeks v. State*, 781 So. 2d 109, 112 (Miss. 2001) (citing *Smith v. State*, 492 So. 2d 260, 263 (Miss. 1986)). In addition, the petitioner must show that the newly discovered evidence will probably produce a different result or induce a different verdict, if a new trial is granted. *Id*. This requires a showing that the evidence is material and is not merely cumulative or impeaching. n3 *Id*.

867 So. 2d at 203-04. Since Mitchell's prior representation is not newly discovered information, this issue is not proper for post conviction relief. However, this Court will revisit this issue under an ineffective assistance of counsel argument which will be discussed

8

in Issue IV of this opinion. Trial counsel knew of Mitchell's representation and chose not to file a motion to disqualify Mitchell.

¶17. Scott claims that his *new* counsel *on post-conviction relief* learned of Mitchell's representation of him on a social security matter. It is clear that Scott's counsel at trial was aware of Mitchell's representation at trial. An e-mail from Scott's trial counsel, Raymond Wong, to post-conviction relief counsel indicated that his trial lawyer knew about Mitchell's former representation of Scott. The e-mail stated:

> Ms. Brenda Mitchell was with Rural Legal Services at the time of Kevin Scott getting his disability check (SSI check - basis: learning disability) which was I believe 4 or 5 years before the murder of Richard Lee. **At the time of trial, I was aware of the above fact but did not file any motion** since she was neither the lead attorney nor assisting the State in prosecution of Scott's case; I think the attorneys for the prosecution were Laurence Y. Mellen (DA) and Glenn Rossi (ADA).

(Emphasis added). Notwithstanding this information and as mentioned above, Scott also never filed a motion to disqualify Mitchell.

¶18. In addition, Scott cannot make a claim that this information is *newly discovered evidence* as it was known to Scott. Scott also had an expert testify and use the testing information performed for Social Security disability qualification during the sentencing phase of the trial.

¶19. Further, at the time of Scott's 1998 trial, ***Atkins v. Virginia***, 536 U.S. 304, had yet to be decided, and therefore, there was no prohibition against execution of individuals that were mentally retarded. The prosecution had no reason at the time of Scott's 1998 trial not to seek

9

the death penalty since mental retardation had no impact on a prosecutor seeking the death penalty. This Court finds this issue to be procedurally barred and without merit.

### III. *Roper v. Simmons*

¶20. Scott argues that at the time the murder was committed, he was six days past his eighteenth birthday. However, he argues that his level of maturity from a cognitive and behavioral standpoint was closer to that of a twelve-year old. Scott argues this is demonstrated through his school grades, Stanford Achievement Test scores, IQ tests and special education class assignment. Scott also points to the opinions of Drs. Tetlow and Zimmerman on his low functioning and cognitive level. He concludes that his death sentence is unconstitutional pursuant to *Roper v. Simmons*, 543 U. S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005).

¶21. The State argues that Scott is not entitled to relief on this issue, noting that he was eighteen-years old at the time of the murder. The State also points out that this Court has strictly applied *Roper* with regard to age limitations and death sentences. *See Jordan v. State,* 918 So. 2d 636, 656 (Miss. 2006); *Hodges v. State*, 912 So. 2d 730, 760 (Miss. 2005).

¶22. In reality, this claim is an extension of Scott's argument that he is mentally retarded as discussed in Issue I. Essentially, Scott is asking this Court to blend the *Atkins* and *Roper* opinions, where *Atkins* addresses the lesser culpability of a mentally retarded offender and *Roper* addresses the lesser culpability of a juvenile offender.

¶23. This Court in *Jordan*, held:

10

In considering death penalty cases via direct appeal and post-conviction relief proceedings, we apply the Constitution of the United States, the Constitution and laws of the State of Mississippi, and case law as handed down by the United States Supreme Court and this Court. Of course, we also look to federal court decisions from this State and federal and state court cases from our sister states for persuasive guidance. On this note, however, we unhesitatingly acknowledge the United States Supreme Court's recent decision in *Roper v. Simmons*, 543 U.S. [sic], 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (March 1, 2005), where the Court in a 5-4 decision declared that death penalty imposition upon offenders who were under the age of 18 when the crimes were committed was violative of the Eighth and Fourteenth Amendments to our federal constitution. In reaching this conclusion, the sharply divided Court relied in part on national and international studies, covenants and treaties. Such reliance generated scathing dissents from Justice O'Connor and Justice Scalia, with Chief Justice Rehnquist and Justice Thomas joining Justice Scalia's dissent. However, in our case today, we note that Jordan's date of birth is December 25, 1976, and the date of these murders was October 5, 1995. Inasmuch as Jordan was 18 years of age - and only 81 days away from his 19th birthday - at the time of the brutal murders of Tony Roberts and 2-year old Codera Bradley, we decline to rely on international laws, covenants and treaties in determining whether the death penalty is appropriate.

*Jordan*, 918 So. 2d at 656. *See also* **Hodges**, 912 So. 2d at 760 (**Roper** does *not* apply to the imposition of a death sentence where defendant was *over* eighteen, nor is the sentence in violation of the Eighth and Fourteenth Amendments).

¶24. The record is clear that Scott was six days past his eighteenth birthday at the time at the time of the crime. Therefore, he was over the age of eighteen albeit by a small margin of time. This Court has upheld death sentences when the defendant was over the age of eighteen at the time of the crime. **Jordan**, 918 So. 2d at 656; **Hodges**, 912 So. 2d at 760. Scott was undoubtedly over the age of eighteen at the time of his crimes; therefore, pursuant to **Roper**, the imposition of Scott's death sentence is appropriate in this case. This issue is

11

without merit.

## IV. Ineffective Assistance of Counsel

¶25. Scott was represented at trial by Wong. On post-conviction relief, Scott is represented by James W. Craig and Jeane A. Thomas. Scott argues that Wong provided ineffective assistance of counsel on numerous occasions during the guilt and sentencing phases of his trial. In *Davis v. State*, 897 So. 2d 960, 964-64 (Miss. 2004), a post-conviction relief case, this Court set forth the standard of review for ineffective assistance of counsel.

> The standard for determining if a defendant received effective assistance of counsel is well established. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant must demonstrate that his attorney's actions were deficient and that the deficiency prejudiced the defense of the case. *Id*. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984), citing *Strickland v. Washington*, 466 U.S. at 687. The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id*.

For Scott to prevail on his claims of ineffective assistance, he is required to demonstrate that counsel's performance was deficient and that the deficiency prejudiced the defense of the case. *Strickland*, 466 U. S. at 686.

**a) failing to develop and present evidence of mental retardation and other mitigating evidence during the sentencing phase**

¶26. Scott argues that Wong failed to undertake any investigation whatsoever for more than

12

one year after accepting the case. He argues that Wong failed to hire a proper investigator and that Wong only spoke to one witness, Scott's mother, regarding possible mitigation. Scott claims that Wong's presentation of little or no mitigating evidence satisfied the first prong of **Strickland**. **Doss v. State,** 882 So. 2d 176, 189 (Miss. 2004); **Burns v. State,** 813 So. 2d 668, 679 (Miss. 2001); **Davis v. State**, 743 So. 2d 326, 339 (Miss. 1999).[3]

¶27. Scott also argues that the prejudice prong of **Strickland** was met where the failure to conduct adequate investigation prevented the jury from hearing evidence of Scott's mental retardation, other mental problems, learning disabilities, social interactions, lifestyle, and other mitigating problems. Scott's application included affidavits from some of the jurors stating that had they known of these problems, it would have had an impact on their decision.

¶28. The State argues that, contrary to what Scott now alleges, his trial counsel did present testimony on mental retardation. Dr. Tetlow testified during the penalty phase. Further, the State asserts that Scott's trial was pre-**Atkins** so there was no reason for counsel to investigate or present more evidence of mental retardation.

¶29. The record reflects that Wong presented evidence of Scott's mental retardation to the jury in the sentencing phase of the trial. Dr. Tetlow, Scott's expert, testified about Scott's mental retardation and the various tests that indicated Scott's I.Q. levels. Dr. Lott, the State's

---

[3] *See also* **Wiggins v. Smith**, 539 U.S. 510, 123 S. Ct. 2527, 156 L.Ed.2d 471 (2003), where the U.S. Supreme Court found ineffective assistance where the attorney failed to properly investigate and presented only a pre-sentencing report and social services records.

expert, also testified about Scott's retardation level and I.Q. The majority opinion in Scott's direct appeal also discussed much of the testimony provided by these experts at trial, including Scott's tests from 1992 used in his social security application. *See Scott v. State*, 878 So. 2d at 945-48. Further, Scott's mother was also questioned regarding Scott's mental retardation. As previously discussed, in 1998 when this case was tried, *Atkins* had not been decided by the United States Supreme Court. We find that Scott's trial counsel placed the issue of Scott's mental retardation before the jury for purposes of mitigation. This issue is without merit.

### b) failing to adequately prepare the defense expert

¶30. Similar to Issue IV(a) above, Scott argues that trial counsel failed to adequately prepare his expert, Dr. Tetlow, for trial by failing to provide relevant information for his evaluation of Scott. The State argues that Dr. Tetlow was a well-qualified and seasoned expert witness who has testified in a number of other cases. Dr. Tetlow was given full access to Scott for evaluation.

¶31. The record reflects that Dr. Tetlow testified in the sentencing phase on the issue of Scott's mental abilities. The direct appeal in this case set forth in great detail the evidence presented to the jury on the issue of Scott's mental abilities. *Scott*, 878 So. 2d at 945-48. Here, the jury heard evidence on the issue of mental retardation including Dr. Tattle's opinion. This issue is without merit.

### c) failing to investigate and discover Mitchell's conflict

14

¶32.   Scott argues that Wong's failure to obtain evidence or records for mitigation resulted in his failure to discover Mitchell's conflict.  Alternatively, Scott argues that if Wong knew of this conflict, his failure to raise it at trial constitutes ineffective assistance of counsel.

¶33.   This Court reviewed this claim in Issue II above and determined that no conflict existed.  Scott claims that Wong was ineffective for failure to discover that Mitchell represented Scott in a prior social security proceeding.  This is flat wrong, as demonstrated by the excerpt from Wong's e-mail to post-conviction relief counsel discussed in Issue II.  As stated in his e-mail, Wong clearly knew about Mitchell's representation for the social security matter and did not raise the issue or choose not file a motion to disqualify.  Wong may have chosen to not pursue this action for trial strategy reasons.  Further, in 1998, Wong did not have the benefit of the *Atkins* and *Chase* decisions which were decided in 2002 and 2004, respectively.  Both Dr. Tetlow and Dr. Lott referred to the 1992 test used for a social security application and testified about Scott's I.Q. levels in regard to mental retardation before the jury.  This issue is without merit.

### d) failing to adequately prepare for trial

¶34.   As he did in Issue IV(a), Scott points to the ABA Guidelines[4] and asserts that Wong failed to adequately prepare a defense.  Scott asserts that Wong met with him only three times, twice before trial and once on the day of trial.  Scott argues that those meetings were

---

[4] ABA Guidelines for Appointment and Performance of Defense Counsel in Death Penalty Cases, Section 11.4.1 and 11.4.2.  *See also Wiggins v. Smith*, 539 U.S. at 524.

15

brief. He also claims that Wong called him as a witness without any advance preparation. He argues that such failure to prepare him for trial was ineffective.

¶35. The State notes that Wong is an experienced defense attorney and that his time sheets indicated that he spend adequate time interviewing Scott and preparing for trial. The State also asserts that Wong met with Scott on seven occasions.

¶36. The record reflects that Wong, Scott's trial attorney met with him. Wong also worked on Scott's trial more than 300 hours as evidenced in petition for payment submitted to the trial court. This issue is without merit.

### e) presenting a de facto guilty plea in his opening remarks by informing the jury that the murder occurred during a robbery in which Scott participated

¶37. This argument goes to Wong's opening statement in which he explains that the killing of Lee occurred during a robbery in which Scott participated. Scott argues that he in no way indicated that he wished to change his not guilty plea and that Wong's stipulation to this element of the charge is the functional equivalent of a guilty plea.

¶38. On direct appeal, Scott raised this issue as a claim that the trial court should have sua sponte ordered a mistrial and as an almost indirect ineffective assistance of counsel claim. On the merits of the claim, this Court found no error, finding that the remarks were entirely consistent with the testimony provided by Scott on direct examination and with Scott's theory of defense. *Scott*, 878 So. 2d at 953-57. The State argues that Scott cannot demonstrate

prejudice, as required by *Strickland*, where this Court has already found the underlying claim to be without merit.

¶39.    We find that the merit of this claim has already been decided, therefore, Scott cannot satisfy the prejudice prong of *Strickland* on this sub-issue of the ineffective assistance claim. This issue is without merit.

> **f) failing to adequately develop and present evidence concerning the lack of a valid *Miranda* waiver**

¶40.    Scott had a suppression hearing for statements that he made to police while in their custody.  Scott argues that his counsel, Wong, failed to inform the trial court of his mental retardation during a suppression hearing.  Scott also argues that had Wong brought this information to the trial court's attention, the statements would likely have been suppressed. However, the record reflects that Wong argued Scott's alleged mental retardation to the trial court.  The motion to suppress, filed with and heard by the trial court, stated in part:

> 10.    The defendant suffers from mental retardation in which his I.Q. range is between 60-70 and due to this mental retardation such persons desire to please authorities. . .

Wong also filed a number of notices of supplemental discoveries with the trial court which included witnesses, Scott's Region One Mental Health Center Record, the Coahoma County High School records, and Dr. Tattle's raw test data.  The trial court made its ruling after all of this additional information was submitted to the trial court.  Clearly, the issue of mental retardation was raised by Wong's suppression motion heard by the trial court.  This issue is without merit.

17

### g) failing to strike jurors during voir dire

¶41.   During voir dire, two jurors, Juror Nos. 58 and 59 indicated that they would automatically vote for the death penalty.  Scott argues that Wong should have elicited additional voir dire testimony as to these two jurors and/or  those jurors should have been stricken.  Instead, when asked by the trial court to provide a list of all jurors who would automatically vote for the death penalty, Wong allowed the State to provide that list to the court.  The State's list did not include Jurors Nos. 58 and 59 and, therefore, Scott argues that these two were not subject to further voir dire questioning.

¶42.   The record reflects that Wong did question Jurors Nos. 58 and 59.  During voir dire, Wong questioned the jurors on the imposition of the death penalty.  Initially, Jurors 58 and 59 indicated that they would vote for the death penalty.  Juror 58 sat on the jury, and Juror No. 59 was an alternate.  However, when questioned further by Wong, both indicated that they would consider mitigating evidence when determining whether to impose a life or death sentence.  The record reflects Wong's questioning as follows:

By Mr. Wong:       Now, if you will remain standing, the next two questions are to you.  If you don't understand, please raise your hand.  Since you are for the death penalty, you are in the penalty phase for this capital murder, would you automatically vote for the death penalty?  You would? That's jurors No. 54, 55, 56, and 59.  Then we have No. 58.

(JURORS No. 54, 55, 56, 58, AND 59 RAISE HANDS).

By Mr. Wong:       Okay.  This is the last question.  You are in the penalty phase and you are a juror, would you consider mitigation

18

> evidence irrelevant in your decision to determine life or death in this trial? If you consider it irrelevant, raise your hand. Okay, Jurors No. 54, 55, 56, 58, 59, 62 did not raise their hands. Thank you.

Clearly, Wong inquired whether these jurors could consider mitigating evidence when considering whether to impose the death penalty. *See Welcher v. State*, 863 So. 2d 719, 768-69 (Miss. 2003). This issue is without merit.

### h) failing to competently prepare the appellate brief

¶43. Wong requested several extensions of time in which to file the appeal brief. He also obtained the help of another attorney, Karl Keys. Scott argues that Wong gave Keys insufficient time to prepare the appellate brief and that Wong filed a "draft" brief to avoid sanctions threatened by this Court.

¶44. The State points out that the brief was eighty-six pages and included twenty-five issues. Keys was involved as early as April, 2001, and sent a draft brief to Wong on November 20, 2002. The State also notes that Scott fails to point to a single claim that he contends should have been raised on appeal but was not.

¶45. In Scott's direct appeal, this Court considered over twenty-five well-briefed issues by both the defense and prosecution. The appeal resulted in a lengthy seventy-five page opinion. The affidavit of Karl Keys stated that the brief was "inadequate"; however, there was no specific cite to any issue that was not raised on direct appeal that should have been an issue for this Court. There is no evidence that Wong did not prepare an adequate brief. This issue is without merit.

19

## V. Improper Aggravating Circumstance

¶46. The aggravating circumstance, that the capital offense was committed for the purpose of avoiding lawful arrest, was presented to the jury in connection with the facts that Scott and his accomplice left the scene of the murder. Scott argues that application of this aggravating circumstance was improper. He argues that fleeing the scene of the crime should not translate to the use of the aggravating circumstance of avoiding lawful arrest. Scott also argues that if the prosecution's case was correct then Lurline, Lee's wife, the one witness who remained alive could and did eventually testify against him. Scott concludes that applying the avoiding lawful arrest aggravating circumstance in this manner would allow it to be found in any circumstance where a defendant leaves the scene of the crime.

¶47. The State notes that this issue was raised on direct appeal and is therefore procedurally barred pursuant to Miss. Code Ann. § 99-39-21(3). Miss. Code Ann. § 99-39-21(3) provides:

> The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

We agree. This issue is procedurally barred. *Scott*, 878 So. 2d at 979-81.

## VI. Trial Court's Failure to Accept the Jury's Initial Verdict

¶48. At the end of the penalty phase, the jury deliberated and returned to inform the court that their verdict was not unanimous. After questioning and admonishing the jury to go back and try to reach a unanimous verdict, the jury returned with a death sentence. Scott argues

that it was error for the trial court to convey to the jury that they must reach an unanimous verdict. *Lowenfield v. Phelps*, 484 U. S. 231, 236, 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988).

¶49.    Scott argues that it was late evening on a Friday where the jury had been sequestered for the entire trial.  He includes affidavits from jurors stating they felt pressured by other jurors to change their votes and/or that they were concerned they would be sequestered all weekend otherwise.  Scott argues the trial court was required as a matter of law to sentence him to life in prison after the jury returned with its initial verdict.  *Bullington v. Missouri*, 451 U. S. 430, 101 S. Ct. 1852, 68 L.Ed. 2d 270 (1981).

¶50.    The State argues that this issue was raised on direct appeal and is now procedurally barred pursuant to Miss. Code Ann. § 99-39-21(3).  We agree.  This issue is procedurally barred.  *Scott*, 878 So. 2d at 985-89; Miss. Code Ann. § 99-39-21(3) ("The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal").

### VII.    Jury Instructions

¶51.    Scott raises a number of issues concerning the jury instructions provided at his trial, as follows:

### a) lesser-included offense instruction

¶52.    Scott asserts that the jury should have been given a lesser-included offense instruction where the evidence supported a lesser-included offense of murder rather than capital murder.  This issue was raised on direct appeal and is now procedurally barred.

21

**b) jury should have been instructed on the weight it should afford the interrogational statements**

¶53. Scott asserts that the jury should have been instructed of its right to assess the credibility of the statements made to police after his arrest. This issue was raised on direct appeal and is procedurally barred.

**c) jury should have been instructed on the credibility of eyewitnesses**

¶54. Lurline, Lee's wife, identified Scott as the one who shot her husband. Scott argues that his identification was based on allegedly seeing him for only a few seconds the day of the incident. Additionally, Scott notes that this is a cross-racial identification and should be viewed with skepticism. This issue was raised on direct appeal and is procedurally barred.

**d) the jury should have been instructed that failing to stop Leroy Lynch from killing Lee is not murder**

¶55. Scott asserts that failing to give an instruction that guilt by association alone does not indicate a criminal act was error. This issue was raised on direct appeal and is procedurally barred.

**e) the sentencing instructions do not sufficiently define mitigation**

¶56. Scott argues that *Penry v. Johnson*, 532 U.S. 782, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001), requires a jury be given instructions on the standard of proof for mitigation. He argues the instruction provided this jury fails to state precisely what is meant by mitigation evidence. This issue was raised on direct appeal and is procedurally barred.

22

**VIII.  Erroneous Striking of Prospective Jurors**

¶57.    Scott argues that the trial court impermissibly struck a prospective juror, Juror No. 49, who stated that she could conform her conduct with the law.  Scott also argues that the trial court failed to strike prospective jurors, Jurors No. 58 and 59, who stated that they could not conform their conduct to the law.

¶58.    Prospective Juror No. 49 was struck by the trial court for cause because she indicated to defense counsel that she was opposed to the death penalty.  Scott argues that the trial court had a duty to ask questions and to explore the depths of the juror's convictions as to the death penalty.  ***Wainwright v. Witt,*** 469 U.S. 412, 423, 105 S. Ct. 844, 83 L. Ed. 2d 841(1985). This issue is procedurally barred for failure to raise the issue at trial or on direct appeal. Miss. Code Ann. § 99-39-21(1).  Turning to the merits, Juror No. 49 clearly indicated that she could not vote for the death penalty in any event; and therefore, her ability to follow the law and instructions of the court was substantially impaired.  There was no error in excluding this juror.

¶59.    Further, Scott argues that Jurors Nos. 58 and 59 stated they would automatically return a verdict of death.[5]  Scott argues that these two jurors should have been excused or that the trial court should have made a detail inquiry into whether these jurors would follow the law. ***Witherspoon v. Illinois***, 391 U.S. 510, 519, 88 S. Ct. 1770, 20 L. Ed. 2d 776 (1968).  This

---

[5]  These two jurors were previously discussed in Issue IV(g).  That issue also had excerpts from the voir dire wherein the defense counsel questioned these prospective jurors.

issue is procedurally barred for failure to raise the issue at trial or on direct appeal. Miss. Code Ann. § 99-39-21(1).

¶60. Turning to the merits, this issue was previously discussed in Issue IV(g), one of these prospective jurors actually sat on the jury and the other was an alternate. Again, defense counsel questioned these jurors further, asking if they would consider mitigating evidence and both said that they would. Scott now argues that the trial court had a responsibility to further question and, possibly, excuse these two jurors. He argues that failure to do so resulted in an inadequate voir dire. *Morgan v. Illinois*, 504 U.S. 719, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992); *Witherspoon,* 391 U.S. at 519. As to Jurors Nos. 58 and 59, there were follow up questions which indicated that these jurors could and would consider mitigating evidence in their sentencing decision, discussed in Issue IV(g). Therefore, the trial court was not required to strike these jurors. This issue is without merit.

### IX. Improper *Miranda* Waiver

¶61. On the day of his arrest, Scott made two statements to law enforcement, one at 4:45 p.m. and another at 7:05 p.m. Portions of both interrogations were recorded, and both were transcribed. According to the transcript of the 4:45 p.m. statement, when Scott is asked if he understood his rights responded, "How long will a lawyer take. . . you give?" In response, the officer again asked if Scott understood his rights. Scott responded, "yes." In the 4:45 p.m. statement, Scott denied any involvement in Lee's murder. The defense filed a motion to suppress both statements on the basis that they were involuntarily given. Scott asserted

that, after being read his rights during the first interrogation, he asked for an attorney and was ignored.

¶62.   At the hearing of that motion, the trial court asked to listen to the tape recording of Scott's 4:45 p.m. statement. After listening several times, the trial court determined that it could not understand what Scott said and, subsequently, held that Scott did not make a demand for an attorney.

¶63.   Scott argues that he invoked his right to counsel following the reading of his ***Miranda*** rights, but that his request for an attorney was ignored. He argues that it was unreasonable for the police officer to continuing questioning him after he had requested an attorney. Furthermore, Scott argues that because he is mentally retarded he was unable to understand the meaning of his constitutional rights and the consequences associated with a waiver.

¶64.   The State asserts that this claim was not raised on direct appeal and is now procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1). Without waiving the procedural bar, the State argues that Scott is not entitled to relief on this claim where he has provided no record to support his claim.[6]

¶65.   We find that the issue is procedurally barred for failure to raise it on direct appeal. Without waiving the procedural bar, we will briefly examine the merits of Scott's argument. Scott had a suppression hearing for statements that he made to police while in their custody.

---

[6]   As noted above, the transcript of the hearing held on April 30, 1998, includes the trial court's finding on whether Scott invoked his right to counsel. A copy of this transcript is included as Exhibit 1 to Scott's rebuttal.

Scott argues that his counsel, Wong, failed to inform the trial court of his mental retardation during the suppression hearing. Scott also argues that had Wong brought this information to the trial court's attention, the statements would likely have been suppressed.

¶66. However, the record reflects that Wong argued Scott's alleged mental retardation to the trial court. The motion to suppress, filed with and heard by the trial court, stated in part:

> 10.    The defendant suffers from mental retardation in which his I.Q. range is between 60-70 and due to this mental retardation such persons desire to please authorities. . .

In addition, the motion referenced Scott's alleged failure to voluntarily waive his rights. The motion also stated in part:

> 11.    The statements made to law enforcement officers while Kevin Scott was I custody were not 'the product of an essentially free and unconstrained choice by its maker.' [citation omitted] Because the statements were not made voluntarily, admission of the statements at trial would violate the defendant's right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution.

Wong also filed a number of notices of supplemental discoveries with the trial court which included witnesses, Scott's Region One Mental Health Center Record, the Coahoma County High School records, and Dr. Tattle's raw test data. This additional information was provided to the trial court prior to the ruling. This issue is procedurally barred and without merit.

## X.    Prosecution Error

26

¶67. This claim goes to the prosecutor's closing argument in which he made references to scripture and to "the Almighty." Scott argues that this Court has held that the prosecution may not request the jury to return a particular verdict for any reason other than the law and the evidence. *Griffin v. State,* 557 So. 2d 542 (Miss. 1990); *Williams v. State,* 522 So. 2d 201, 209 (Miss. 1988); *Wells v. State,* 463 So. 2d 1048 (Miss. 1985); *Fulgham v. State,* 386 So. 2d 1099 (Miss. 1980).

¶68. The State asserts that this claim is procedurally barred pursuant Miss. Code Ann. § 99-39-21(3) where it was addressed on direct appeal. We agree. Since this issue was raised on direct appeal, it is procedurally barred.

## XI. Race

¶69. Scott argues that Mississippi's death penalty scheme is unconstitutional because it operates on the basis of race. He cites statistics which indicate that black defendants charged with killing white victims are 800% more likely to receive the death penalty. The State argues that this issue was raised on direct appeal and is now procedurally barred pursuant to Miss. Code Ann. § 99-39-21(3). We agree. Since this issue was raised on direct appeal, it is procedurally barred.

## XII. Cumulative Errors

¶70. In *Foster v. State*, 639 So. 2d 1263, 1303 (Miss. 1994), this Court held "[a]s previously discussed under the individual propositions, no reversible error was committed in the trial of this case. We find no 'near errors' in either phase of this trial, so we find no

27

cumulative error." In ***Gray v. State***, 887 So. 2d 158, 172-73 (Miss. 2004 ), a post-conviction

case, this Court held:

> Next, Gray argues generically that the alleged preceding errors, taken as a
> whole, deprived him of a fair trial. This Court has previously held that "where
> there is 'no reversible error in any part, . . . there is no reversible error to the
> whole." ***Byrom v. State***, 863 So. 2d 836, 847 (Miss. 2003) (quoting ***McFee***
> ***v. State***, 511 So. 2d 130, 136 (Miss. 1987)). Since Gray has not yet shown any
> actual error by the trial court, there can be no cumulative effect and no adverse
> impact upon his constitutional right to fair trial. This issue is without merit.

***Gray***, 887 So. 2d at 172-73.

¶71.    In ***Nixon v. State***, 641 So. 2d 751, 755-56 (Miss. 1994), a post-conviction relief case,

this Court considered the issue of cumulative error. This Court held:

> This Court is now asked to determine whether the cumulative effect of any
> discovered errors or "near-errors" constituted a violation of Nixon's right to a
> fair trial. *See, e.g.*, ***Stringer v. State***, 500 So. 2d 928, 946 (Miss. 1986) (death
> sentence vacated in view of numerous "near-errors" which violated defendant's
> right to a fair trial). Nixon raised this issue on direct appeal. ***Nixon v. State***,
> 533 So. 2d 1078, 1102 (Miss. 1987), cert den. 490 U.S. 1102, 109 S.Ct. 2458,
> 104 L. Ed. 2d 1012 (1989). This Court has again examined the record and
> determined that Nixon received a fair trial--albeit not a perfect one. *See* ***Sand***
> ***v. State***, 467 So. 2d 907, 911 (Miss. 1985) ("Although this defendant did not
> receive a perfect trial, it was a fair trial."); *see also* ***Stringer***, 500 So. 2d at 947
> ("There has never been a perfect trial." (R.N. Lee, P.J., dissenting)).

> In sum, this Court holds that the contention presented through this issue is
> devoid of merit.

***Nixon***, 641 So. 2d at 755-56.

¶72.    Scott raises a cumulative error claim on post-conviction relief. Scott also raised the

issue of cumulative error in his direct appeal. ***Scott***, 878 So. 2d at 997-98. This Court found

no cumulative error in Scott's direct appeal to merit reversal of the conviction or sentence.

28

*Id*. To the extent that any issues raised by Scott on post-conviction relief are the same as those raised in his direct appeal, this Court finds that these issues are procedurally barred. *Byrom v. State*, 927 So. 2d 709, 729 (Miss. 2006). As to the new issues raised on post-conviction relief by Scott and previously addressed by this Court in this opinion, Scott has failed to demonstrate any error with these new claims. *Gray*, 887 So. 2d at 172-73; *Nixon*, 642 So. 2d at 755-56. This issue is without merit.

## CONCLUSION

¶73. For the foregoing reasons, the petition for post-conviction relief is granted in part and denied in part. This Court grants Scott's petition for post conviction relief on the sole issue of mental retardation and remands this issue to the Circuit Court of Bolivar County to conduct an evidentiary hearing on the mental retardation issue pursuant to the guidelines expressed by this Court in *Chase*. The petition is denied as to all other issues raised in Scott's petition for post-conviction relief.

¶74. **PETITION FOR POST-CONVICTION RELIEF IS GRANTED IN PART AND DENIED IN PART.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION.**