United States Court of Appeals,

Fifth Circuit.

No. 93-5526.

James Lee BULLOCK, Plaintiff-Appellant,

v.

John P. WHITLEY, Warden, Louisiana State Penitentiary, Defendant-Appellee.

June 2, 1995.

Appeal from the United States District Court for the Western District of Louisiana.

Before WISDOM, WIENER, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

James Lee Bullock, a Louisiana state prisoner, appeals the district court's dismissal of his petition for habeas relief.[1] Finding no error, we affirm.

I. FACTS

On January 27, 1976, at a bar in Morgan City, Louisiana, Plaintiff Bullock, his girlfriend Cindy Scarborough, and his friend Joseph Moreno, met Joseph Mincey. Although previously unknown to the plaintiff and his friends, Mincey prevailed upon them to take him dancing. The four drove from Morgan City down Highway 70 toward Belle River. The car ostensibly stalled in a desolate area of St. Martin Parish.

Bullock, Moreno, and Mincey exited the car and began efforts to repair it. A short time later, a fight broke out between Bullock and Mincey. There was conflicting testimony regarding who

_____

[1] 28 U.S.C. § 2254.

1

instigated the fight, but it was undisputed that the fight ended with Bullock beating Mincey with an eighteen-inch billy club. The petitioner's girlfriend, Cindy Scarborough, testified that she heard Mincey pleading for the beating to stop. She also testified that Bullock and Moreno searched Mincey's boots for money after they discovered that there was nothing in his wallet.

Bullock testified that as he was attempting to repair the car, Mincey, who was much larger than Bullock, threatened him and shoved him to the ground. Bullock claimed that he used the billy club to protect himself. Bullock also testified that he took Mincey's money to pay for towing costs, although he and his friends were able to drive away in the car after the fight.

Mincey apparently crawled away from the road to a levee where his body was found three days later. The coroner testified that Mincey died as a result of an acute cerebral hemorrhage caused by a forceful blow to the head. Mincey's boots were later found in a trailer belonging to Bullock's father.

Bullock was arrested on February 4, 1976. On February 4 and 5, Bullock gave statements to the authorities detailing the events of the evening of January 27. On February 25, 1976, Bullock was indicted for first degree murder. Beginning May 10, 1976, Bullock was tried before a jury in St. Martinville, Louisiana. The jury returned a verdict of guilty of second degree murder. Bullock was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for 40 years.

In 1983, Bullock was granted permission to file an out-of-time

2

appeal.[2] The Louisiana Court of Appeals for the Third Circuit affirmed his conviction and sentence.[3] The Louisiana Supreme Court denied Bullock's petition for review.[4]

Bullock sought state post-conviction relief. November 22, 1989, the state district court denied Bullock's petition. The Louisiana Supreme Court denied Bullock's petition for post-conviction relief on May 17, 1991.[5]

Bullock filed the present habeas petition in the U.S. District Court for the Western District of Louisiana on September 8, 1992. Bullock raised three grounds for habeas relief: (1) ineffective assistance of counsel based on his trial attorney's addition of a not guilty by reason of insanity plea on the morning of trial without adequate preparation to present that defense; (2) conflict of interest in that petitioner's appointed counsel was the elected mayor of the city in which the case was tried; and (3) conflict of interest in that Paul DeMahy, appointed counsel for co-defendant Joseph Moreno, obtained statement's from him that were allegedly used against petitioner at trial.

The petition was referred to a magistrate judge. The magistrate concluded that an evidentiary hearing was unnecessary

---

[2]*State v. Bullock,* 435 So.2d 446 (La.1983).

[3]*State v. Bullock,* 476 So.2d 1008 (La.Ct.App.1985).

[4]*State v. Bullock,* 481 So.2d 628 (La.1986).

[5]Although there appears to be no record of a petition for post-conviction relief being filed in the Louisiana Court of Appeals, The State of Louisiana has waived any procedural objections to Bullock's federal habeas petition.

3

because there were no contested issues of fact. The magistrate filed a report and recommendation on September 21, 1993, recommending that the petition be denied. Bullock filed objections, which the district court implicitly overruled when it adopted the magistrate's report and dismissed Bullock's petition on October 15, 1993. Bullock filed a notice of appeal, and a request for a certificate of probable cause to appeal. The district court denied Bullock's request for a certificate of probable cause. We granted Bullock's motion for a certificate of probable cause to allow him an opportunity to address the merits of his appeal.

## II. DISCUSSION

We agree with the magistrate's finding that there are no contested issues of fact relevant to Bullock's petition. Thus, we decline to remand to the district court for an evidentiary hearing as petitioner requests, and we review each of the grounds presented by the petition *de novo.*

### A.

Bullock first contends that he received ineffective assistance of counsel because Earl H. Willis, his trial counsel, failed to take the steps necessary to support the alternate defense of not guilty by reason of insanity. Specifically, Bullock contends that Willis was deficient because he did not request the appointment of a sanity commission or request a continuance to gather evidence.

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, the petitioner must show that counsel's performance was deficient.

4

This requires a showing that counsel's errors were "so serious that counsel was not functioning as the "counsel' guaranteed by the Sixth Amendment."[6]   Second, the petitioner must show that the deficient performance prejudiced his defense.   This requires a showing that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable.[7]

At his arraignment, Bullock, represented by Willis, entered a plea of "not guilty."  From the record, including the defendant's statements, it is apparent that Bullock's primary defense was that of self defense.  On the morning of May 10, just prior to jury selection, Willis moved to add the plea of not guilty by reason of insanity.  Because the motion came on the morning of trial, Bullock was required to show cause for the change.

A hearing was held outside the presence of the jury regarding the change in plea.  Bullock testified about his various family problems, his prior problems with the law, and psychiatric treatment received while previously incarcerated.  Willis did not offer any documentary evidence of prior psychiatric evaluations or treatment, although he stated that he "intend[ed] to bring the [Angola] psychiatrist if [the defense could] get hold of him."

When the state trial judge asked if Willis desired the appointment of a sanity commission, Willis declined, stating that

---

[6]*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

[7]*Lockhart v. Fretwell,* --- U.S. ----, ----, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993);  *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

5

he was prepared to go to trial. Willis stated that he had been trying to gather information regarding the insanity defense for only about 72 hours, but did not need a continuance to investigate further and/or to gather additional evidence or to obtain the Angola psychiatrist's presence at trial. The trial judge granted the defense motion, and changed Bullock's plea to not guilty and not guilty by reason of insanity, without ordering a continuance.

Bullock testified at trial regarding his personal problems, troubled past, unhappy existence, and prior psychiatric treatment. On cross-examination, Bullock admitted he had never been committed to any mental institutions, but stated he had talked to two different psychiatrists a total of six times while incarcerated at Angola. He also testified that he had been prescribed tranquilizers and other pills which he could not identify. Willis offered only Bullock's testimony regarding Bullock's psychiatric history and personal difficulties. Willis did not offer any expert testimony, documentary evidence, psychiatric records or evaluations, or any other evidence to attempt to establish Bullock's insanity.

The proper standard for evaluating counsel's effectiveness under the Sixth Amendment is that of "reasonably effective assistance."[8] This standard requires that we consider the reasonableness of counsel's assistance under all the circumstances. However, we must show great deference to counsel's judgment and observe a strong presumption that counsel exercised reasonable

---

[8]*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

professional judgment.[9]  In *Strickland v. Washington,* the Supreme Court set forth the appropriate standard:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."[10]

In reviewing Willis' performance, we note first that his efforts indicate general preparedness and familiarity with the case.  Prior to trial, Willis filed appropriate motions on Bullock's behalf, including a motion to suppress Bullock's statements and physical evidence seized without a warrant, a motion to reduce bond, a motion for discovery of written statements, and a motion for a bill of particulars.  Although the motions to suppress and reduce bond were unsuccessful, Mr. Willis called appropriate witnesses in support of his motions and actively cross-examined all state witnesses.  Willis did obtain copies of the transcribed statements given by the defendant.  Willis was also successful in forcing the State to reveal the type of weapon used and that the State did not know the exact date of the victim's death.

Willis asked prospective jurors pertinent questions during voir dire regarding their views on insanity, their understanding of

---

[9]*Strickland,* 466 U.S. at 688-89, 104 S.Ct. at 2065.

[10]*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

reasonable doubts, their attitudes toward people with criminal records, and other issues.  During the course of the trial, Willis asked relevant questions of the state's witnesses, put the defendant on the stand, and forced the State to call three rebuttal police witnesses it had not anticipated calling.  At the close of trial, Willis made an effective closing argument in which he emphasized to the jury that Bullock had acted in self defense and that the defendant had psychological problems.  The trial court instructed the jury on both self defense and insanity.

Mr. Willis is now deceased.  Bullock correctly asserts that Willis' reasons for failing to investigate Bullock's mental state more thoroughly are now forever indeterminable.  However, trial counsel's testimony is not necessary to our determination that a particular decision might be considered sound trial strategy.

Bullock was charged with first degree murder and could have been sentenced to the death penalty if found guilty of that offense.  Upon evaluating Bullock's past, it is probable that Willis determined that arguing the insanity defense would be in his client's best interest even if he had almost no chance of carrying the burden of proof.  As a practical matter, adding the plea of not guilty by reason of insanity made evidence of Bullock's prior mental and emotional problems admissible and allowed Willis the opportunity to gain as much sympathy as possible with the jury in order to obtain a favorable result for his client.[11]  It is also

_____

[11]Although there was no opportunity to obtain Mr. Willis' testimony regarding his motivations, our review of the record has left us with the distinct impression that Willis did the best he

probable that Willis concluded that further investigation or psychological evaluation would only serve to undermine the insanity defense.

However, we need not conclude that Willis actually made his strategic decisions for these reasons.  Instead, we are required to presume that the challenged actions were within the wide range of reasonable professional conduct if, under the circumstances, it "might have been sound trial strategy."[12]  It was Bullock's burden to overcome that presumption.  The district court concluded that Bullock could not meet this burden.  We agree.

Bullock's claim of ineffectiveness is based on Willis' decision not to investigate more fully Bullock's psychological condition.  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[13]  As discussed above, under the circumstances, Willis' decision not to investigate further likely was based on reasonable professional judgments regarding Bullock's defense.

Bullock has offered no basis for concluding that Willis'

---

could with what he had.  It seems likely that the information available to Mr. Willis made it appear that there was virtually no chance of establishing the insanity defense.  At the same time, establishing an arguable basis for the defense and arguing it to the jury allowed Willis the opportunity to foster sympathy, at least to some extent, for a client who was otherwise very unsympathetic.

[12]*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

[13]*Strickland,* 466 U.S. at 690-91, 104 S.Ct. at 2066.

judgments were unreasonable, and the record does not allow the conclusion that Willis' judgments were unreasonable as a matter of law. Because we find that Bullock failed to establish the first prong of his ineffective assistance claim under *Strickland,* we do not address Bullock's allegations of prejudice.

### B.

Bullock also contends that he is entitled to habeas relief because of conflicts of interest suffered by counsel. First, he claims that his trial counsel, Willis, suffered from a conflict of interest because he was the elected mayor of the city in which the case was tried. Second, he claims a conflict of interest in that Paul DeMahy, appointed counsel for co-defendant Joseph Moreno, obtained statement's from him that were allegedly used against petitioner at trial. To establish a claim of ineffective assistance based on conflict of interest, a defendant who raised no objection at trial "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."[14]

With regard to Willis' service as mayor of St. Martinville, Bullock claims Willis had a duty to see that he was convicted. However, in that small community, mayor was a part-time position and the mayor was allowed to continue his full-time profession. Bullock has not alleged that Willis was actually involved in the investigation or prosecution of this case as the mayor of the town. There is no indication in the record that Willis was hampered in

---

[14]*Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980).

10

his representation of Bullock by his elected position. Under the circumstances, this claim must be deemed frivolous.

Bullock's second claim of conflict of interest is based on the fact that DeMahy, counsel for co-defendant Moreno, conducted the majority of the interviews with petitioner and conveyed that information to Willis. Bullock contends, without alleging specific details and admitting that there is no support in the record, that DeMahy was instrumental in the authorities obtaining confessions from Bullock. However, the record indicates that Bullock's statements to the authorities were given voluntarily after he was advised of his rights.

The record does not indicate that Willis' representation was adversely effected by DeMahy's involvement in conducting interviews or investigation. In addition, it is undisputed that DeMahy did not participate in Bullock's trial, Bullock was tried alone, and co-defendant Moreno did not testify at Bullock's trial. Bullock has not demonstrated an actual conflict of interest or that any conflict of interest adversely affected Willis' performance.

## III. CONCLUSION

For the reasons given above, the judgment of the district court dismissing Bullock's petition for habeas relief is AFFIRMED.