**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 27, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

NO. 02-60385

_____

JOHN B. NIXON, SR.,

Petitioner-Appellant,

versus

CHRISTOPHER B. EPPS, COMMISSIONER,
MISSISSIPPI DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
3:95-CV-91(Br)(S)

Before JONES, SMITH and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

This habeas appeal arises out of the January 1985 murder
of Virginia Tucker. John B. Nixon, Sr. was convicted of capital
murder by a Rankin County, Mississippi jury after a three-day
trial. In the penalty phase of the trial the jury returned a death
penalty verdict and found that the capital offense was committed
for pecuniary gain, that the murder was especially heinous,

----

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

atrocious and cruel, and that the defendant had previously been convicted of a felony involving the use or threat of violence to a person. The conviction was affirmed on direct appeal by the Mississippi Supreme Court. Nixon v. State, 533 So. 2d 1078 (Miss. 1987). Certiorari was denied by the United States Supreme Court in 1989. Nixon v. Mississippi, 492 U.S. 932, 110 S. Ct. 13, 106 L. Ed. 2d 628 (1989). Nixon exhausted his state post-conviction remedies. Nixon v. State, 641 So. 2d 751 (Miss. 1994), cert. denied, Nixon v. Mississippi, 513 U.S. 1120, 115 S. Ct. 922, 130 L. Ed. 2d 802 (1995). Nixon then filed a federal petition for a writ of habeas corpus. The district court, in a series of three decisions between 1998 and 2002, denied habeas relief. The case comes to this court on appeal from the district court's grant of a certificate of appealability (COA) on Nixon's claim of ineffective assistance of counsel and on Nixon's motion to this court for a COA on ten other grounds.

For the reasons that follow, we deny COA on most of the issues sought by petitioner, but grant COA and deny relief on his Batson/Powers claim. We grant COA on his claim regarding the introduction of a prior violent felony conviction before the jury as an aggravator. We defer ruling on the ineffective assistance claim pending briefing.

## I. BACKGROUND

2

On January 22, 1985, Nixon and two other individuals arrived at the home of Thomas and Virginia Tucker. Upon entering the house, Nixon pulled out a .22 caliber pistol and said, "I brought y'all something." Mr. Tucker, who had married his wife six months earlier (a scant three months after her prior divorce was finalized), immediately surmised that men had been hired by Mrs. Tucker's former husband, Elster Joseph Ponthieux. Tucker offered Nixon money to spare their lives, but Ponthieux replied "[t]hat's not what I'm after. The deal's already been made." Nixon and one of his associates then shot at Tucker, who managed to escape despite being hit in the side. Tucker made his way to his nearby place of work and asked a co-worker to check on his wife. Meanwhile, Nixon took the gun back from his associate, held the gun one inch behind Mrs. Tucker's ear and fired a shot into her head. Nixon and his associates fled. Mrs. Tucker was soon discovered by Tucker's co-worker and was taken to the hospital, where she died the next day. Nixon was arrested after being identified in a lineup by Mr. Tucker.

At trial, as noted above, Nixon was convicted of capital murder and sentenced to death. Following completion of his direct appeal and state post-conviction proceedings, Nixon filed a federal habeas petition that was denied by the district court. This application for a COA followed.

## II. DISCUSSION

Nixon has briefed ten separate grounds upon which he argues a COA should issue, and the state has responded. We first set forth the applicable standards of review and then turn to the issues he has raised.

### A. Standard of Review

Nixon filed his original federal habeas petition in the district court on May 24, 1995. Because the petition was filed before the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), pre-AEDPA standards apply to the district court's review of the petition as well as to our review of the petition. See Lindh v. Murphy, 521 U.S. 320, 326-27, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997); see also Slack v. McDaniel, 529 U.S. 473, 481, 120 S. Ct. 1595, 1602, 146 L. Ed. 2d 542 (2000) (noting that "Lindh requires a court of appeals to apply pre-AEDPA law in reviewing the trial court's ruling, for cases commenced there pre-AEDPA"). However, because Nixon's notice of appeal was filed in this court on January 14, 2003, the post-AEDPA version of 28 U.S.C. § 2253 — the statute governing appeals of habeas petitions — sets forth the appropriate standard for this court to apply in determining whether Nixon has a right to appeal. Slack, 529 U.S. at 481, 120 S. Ct. at 1602.

Part of Nixon's appeal remains pending before this court following the district court's grant of a COA on one issue. In

4

this portion, however, we must decide whether to expand the COA grant after the district court refused it on the other issues.  In making the threshold inquiry into whether a COA should issue, the Supreme Court reminds us, AEDPA bars the courts of appeals from undertaking "full consideration of the factual or legal basis adduced in support of the claims."  Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003).  Rather, we must be careful to undertake only "an overview of the claims in the habeas petition and [make] a general assessment of their merits."  Miller-El, 537 U.S. at 336, 123 S. Ct. at 1039.

A COA should issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000 & Supp. 2003).  This standard is satisfied when the applicant demonstrates that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327, 123 S. Ct. at 1034.  We may not, however, deny a COA merely because we believe "that the applicant will not demonstrate an entitlement to relief."  Id. at 337, 123 S. Ct. at 1039.  Moreover, "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."  Id. at 338, 123 S. Ct. at 1040. Therefore, where the death penalty is at issue, "any doubt as to

5

whether a COA should issue must be resolved in [the petitioner's] favor." Hernandez v. Johnson, 213 F.3d 243, 248 (5th Cir. 2000).

In evaluating the district court's resolution on the merits of issues presented to it, we review the district court's findings of fact for clear error and its conclusions of law de novo. Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001). We review its determination of a procedural bar de novo. Johnson v. Puckett, 176 F.3d 809, 814 (5th Cir. 1999).

## B.    Procedural Bars

Nixon first argues that a COA should issue because the district court improperly found that the following claims were procedurally barred: (1) that the prosecution improperly dis-criminated on the basis of race in using its peremptory strikes during voir dire in violation of Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), (2) that the evidence of Mr. Tucker's identification of Nixon during the lineup and at trial was improper because it was derived from impermissibly suggestive and unreliable procedures, and (3) that the prosecution improperly withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The state argues that while the district court held these claims to be procedurally barred, it also addressed each claim on the merits in the alternative and as such, the COA should not issue because jurists of reason cannot dispute the district court's resolution of

6

the merits issues. Because each of these issues appears in a distinct procedural context, we will examine them along with any appropriate merits discussion.

The general principles of procedural default may be quickly repeated. A federal court may not grant habeas relief where the last state court to consider the claim raised by the petitioner expressly and unambiguously based its denial of relief on an independent and adequate state law procedural ground. Henderson v. Cockrell, 333 F.3d 592, 604 (5th Cir. 2003), cert. denied, Henderson v. Dretke, 124 S. Ct. 1170, 157 L. Ed. 2d 1208 (2004). A state procedural rule is independent if it does not "depend[] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75, 105 S. Ct. 1087, 1092, 84 L. Ed. 2d 53 (1985), and it is adequate if firmly established and regularly and consistently applied by the state court. Henderson, 333 F.3d at 604. Where a state court finds procedural default on the basis of an independent and adequate state ground, absent a showing of cause and actual prejudice, a federal habeas petitioner may not obtain relief. Id. (citing Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565, 115 L. Ed. 2d 640 (1991)).

## C. **Batson Claim**

### 1. **Procedural Default on the Batson/Powers Claim**

The district court considered itself precluded from reviewing several of Nixon's claims, including his Batson/Powers

7

claim, because the state courts had determined that Nixon failed to raise the claim properly during the state court proceedings. The state concedes, however, that the district court misinterpreted the Mississippi Supreme Court's ruling concerning this claim on collateral review, see Nixon, 641 So. 2d at 753-56, and a COA would be proper if the federal court's discussion had stopped there. Because the federal court went on to resolve this claim on the merits, correctly, in the state's view, the state concludes that no COA is required. In a cautious approach to the Supreme Court's decision in Miller-El, supra, we grant COA but hold that Nixon's claim cannot prevail.

## 2. Batson, Powers and Teague Non-Retroactivity

Nixon argues that the exclusion of all African-Americans from his jury violated the Fourteenth Amendment under Batson and Powers. On direct appeal, the Mississippi Supreme Court held that as a white male, Nixon lacked standing to raise a Batson challenge based on the exclusion of jurors of a different race. Nixon, 533 So. 2d at 1086. Two years after Nixon's cert. petition was denied, however, the Supreme Court held that a white male could challenge the discriminatory use of peremptory challenges. Powers, 499 U.S. at 416. On post-conviction review, the state supreme court held that the non-retroactivity principle of Teague barred the application of Powers and that Nixon could not obtain any relief on his Batson claim. Nixon, 641 So. 2d. at 753-55. The federal

8

district court agreed with the Mississippi Supreme Court and held that Powers was not retroactively applicable.

To begin with, Batson itself is not retroactive to claims pending on collateral review. Allen v. Hardy, 478 U.S. 255, 261, 106 S. Ct. 2878, 2881, 92 L. Ed. 2d 199 (1986) (per curiam) ("Our weighing of the pertinent criteria compels the conclusion that the rule in Batson should not be available to petitioner on federal habeas corpus review of his convictions."). While some of the logic underlying Allen has since been repudiated by the Supreme Court, the case nonetheless remains good law. See Procter v. Butler, 831 F.2d 1251, 1254 n.4 (5th Cir. 1987) (noting that while the Supreme Court's holding in Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987) that Batson applies to cases still pending on direct appeal "casts some doubt on the continued validity of Allen's reasoning," the Court "limited its holding to cases still on direct appeal, and avoided any suggestion that Allen's holding — concerning cases on collateral review — should be changed"). Since Nixon's case became final on direct appeal following Batson, Batson applies to his claim. United States v. Robinson, 367 F.3d 278 (5th Cir. 2004) (citing Griffith, 479 U.S. at 322, 107 S. Ct. at 712).

The determinative question in this case, and res nova in this court, is whether Powers sets forth a "new rule" that is not retroactively applicable under Teague. As the state notes, every other circuit court to have directly addressed this issue has held

9

that _Powers_ is not retroactively applicable to claims on collateral review.  See, e.g., Nguyen v. Reynolds, 131 F.3d 1340, 1351-52 (10th Cir. 1997); Jones v. Gomez, 66 F.3d 199, 202-04 (9th Cir. 1995); Van Daalwyk v. United States, 21 F.3d 179, 180-83 (7th Cir. 1994); Farrell v. Davis, 3 F.3d 370, 371-72 (11th Cir. 1993); Echlin v. LeCureux, 995 F.2d 1344, 1349-51 (6th Cir. 1993).  Nixon agrees and cites no cases to the contrary, but he nonetheless argues that _Powers_ does not constitute a new rule under _Teague_. Based on the strong consensus, not only of federal circuit courts but also of state supreme courts, that _Powers_ is nonretroactive on collateral review, we disagree.  See Brown v. State, 798 So.2d 481, 505-06, ¶ 66 (Miss. 2001); Brewer v. State, 819 So.2d 1165, 1167-68, ¶¶ 13-14 (Miss. 2000); Holland v. State, 705 So.2d 307, 327-29, ¶¶ 45-47, 53-55 (Miss. 1997); King v. State, 656 So.2d 1168, 1174-78 (Miss. 1995); Fleming v. State, 604 So.2d 280, 294 (Miss. 1992).  Nixon's citation of a footnote in J.E.B. v. Alabama, 511 U.S. 127, 141 n.12, 114 S. Ct. 1419, 1427 n.12, 128 L. Ed. 2d 89 (1994), which suggests doctrinal "compulsion" behind the Court's prohibition of sex-based peremptory strikes, also fails to persuade.  J.E.B. followed _Powers_ and _Batson_ as a logical corollary of those cases' holdings that race-based peremptory strikes violate the Equal Protection Clause.  The J.E.B. footnote expresses no opinion on, and certainly does not reach, the separate question whether it was "doctrinally compelled," and therefore not a "new rule," to hold that a defendant from one race or sex can challenge

10

discrimination in jury selection against members of another race or gender. Nixon's <u>Batson</u>/<u>Powers</u> claim fails on the merits.

## D. Improper Identification Claim

In his pre-trial motion to suppress, Nixon asserted that Mr. Tucker's identification of him was the product of an unduly suggestive lineup. The motion was eventually withdrawn by Nixon's trial counsel and the issue was not raised at trial. On direct appeal, the Mississippi Supreme Court noted that no objection was made at trial on this issue, and therefore, the claim may not have been cognizable on appeal, <u>Nixon</u>, 533 So. 2d at 1086-87, but the court proceeded to consider and reject Nixon's identification claim on the merits. <u>Id.</u> On state post-conviction review, the identification claim was not addressed by the court, but was dismissed as procedurally barred. <u>Nixon</u>, 641 So. 2d at 756 ("A published analysis of the remaining issues is unwarranted because Nixon has waived his right to raise them at this time.").[1]

It is unclear whether, in stating that this claim is procedurally barred from federal review, the district court relied upon the Mississippi Supreme Court's ruling on direct appeal or on post-conviction review. In any event, because the district court also discussed this claim in detail and rejected it on the merits, we need not decide the correctness of the district court's

___

[1] The court based its procedural bar ruling on two bars available under Mississippi's post-conviction review scheme: (1) failure to raise a claim on direct appeal and (2) res judicata where a claim was raised and disposed of on the merits on direct appeal. <u>See Nixon</u>, 641 So. 2d at 756 n.8.

procedural bar analysis.  More than that, we may not decide the merits of the identification claim either, for, unlike his <u>Batson</u> claim, Nixon has not requested a COA on the district court's ruling on the merits.  Nor does Nixon brief or argue any substantive challenge to the district court's merits ruling on the identification claim in this court.  As a result, Nixon has abandoned any argument that the district court's resolution of the merits claim is debatable among jurists of reason.  See <u>Foster</u>, 293 F.3d. 766 784 (5th Cir. 2002) (unbriefed claims are abandoned).  Even if we granted a COA on the procedural default question, our decision would not provide Nixon with any relief because the merits determination by the district court must stand.  See <u>Slack</u>, 529 U.S. at 484-85 (where a procedural ruling is at issue, § 2253 requires a petitioner to show debatable issues concerning <u>both</u> the denial of a constitutional right and error in a district court's procedural ruling before a court of appeals may grant a COA and consider the appeal).  Thus, we decline to grant the COA on the district court's procedural default ruling regarding the identification claim and we will not issue a COA on the merits of the claim.

**E.  <u>Brady</u> Claim**

When the <u>Brady</u> claim was first raised by Nixon on post-conviction review, the Mississippi Supreme Court held the claim procedurally barred.  <u>Nixon</u>, 641 So. 2d at 756.  Because the <u>Brady</u>

12

claim was not raised at trial or on direct appeal or discussed on its merits, it is apparent that the Mississippi court relied solely on the failure to raise bar. This bar constitutes an independent state ground for rejecting a habeas petitioner's claim in federal court. See Puckett, 176 F.3d at 823-24 (discussing the application of Miss. Code Ann. § 99-39-21(1) to the petitioner's Batson claim); see also Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997) (holding that "§ 99-39-21(1) does contain an independent state procedural bar").

The next question is whether the failure to raise bar is adequate as applied to Brady claims. As the state notes, "[w]e presume the adequacy and independence of a state procedural rule when the state court expressly relies on it in deciding not to review a claim for collateral relief." Sones v. Hargett, 61 F.3d 410, 416 (5th Cir. 1995). Further, the petitioner bears the burden of demonstrating the inadequacy of a state procedural rule and must show that the state has failed to apply the procedural bar to claims similar to those he raises. Stokes, 123 F.3d at 860. While Nixon cites no cases indicating that Mississippi has failed regularly to apply the procedural bar contained in § 99-39-21(1) to Brady-type claims, and therefore appears unable to carry his burden

13

in this regard, we are reluctant to foreclose the issue altogether because the cases cited by the state are less than compelling.[2]

As a prudential matter, we shall assume arguendo that the state procedural bar applied to this claim was independent and adequate, and move on to Nixon's contention that his claim is reviewable based upon a showing of cause and actual prejudice. Henderson, 333 F.3d at 604 (citing Coleman, 501 U.S. at 750, 111 S. Ct. at 2565). We need not consider his allegation of cause for his procedural default, however, as Nixon cannot show actual prejudice from the alleged Brady violation.

In order to succeed on a Brady claim, a defendant must show that (1) the state withheld evidence, (2) the evidence is favorable to the accused, and (3) the evidence is material to guilt or punishment. DiLosa v. Cain, 279 F.3d 259, 262-63 (5th Cir. 2002) (citing United States v. Bagley, 473 U.S. 667, 674, 105 S. Ct. 3375, 3379, 87 L. Ed. 2d 481 (1985)). Evidence is material

---

[2] The cases cited by the state for the proposition that the Mississippi Supreme Court has consistently applied the failure to raise bar to Brady claims do not clearly stand for that proposition. Indeed, at least one recent Mississippi Supreme Court case appears to indicate that the Mississippi court is not necessarily strict and consistent in its application of this bar in Brady cases. See Simon v. State, 857 So. 2d 668, 679 (Miss. 2003) cert. denied by Simon v. Mississippi, 124 S. Ct. 1885 (2004) (refusing to impose the failure to raise procedural bar where a petitioner claimed he did not have access to the Brady materials at the time of his direct appeal). In addition, the state's citation to Johnson v. Puckett, 176 F.3d 809 (5th Cir. 1999), for the proposition that the failure to raise bar is adequate as applied to Brady claims is incorrect. Johnson considered a Brady claim that the petitioner conceded was barred and discussed only whether the petitioner had established cause and prejudice. See Johnson, 176 F.3d at 815-16. The Johnson court's holding that the application of Mississippi's failure to raise bar constituted an independent and adequate state ground for precluding federal habeas relief pertained only to a Batson claim. Id. at 823-24.

14

under Brady "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682. The evidence proffered by Nixon was neither material nor prejudicial.

Nixon alleges that Wade Carpenter, the man who sold the gun that was used to murder Mrs. Tucker, was shown a picture of an individual that the police believed to be the murderer and that Carpenter said he did not sell the gun to the individual in the photograph. This much of Nixon's claim is supported by Carpenter's affidavit. However, Nixon also claims, with no evidentiary support, that Nixon's photo was the one shown to Carpenter. As the district court noted in its opinion, nothing in Carpenter's affidavit even suggests that Nixon was the man in the picture. In addition, given that one of Nixon's co-conspirators testified at trial that Nixon was the triggerman who killed Mrs. Tucker, any benefit that Nixon would have gained from Carpenter's statement, even if he was actually referring to a photo of Nixon, is illusory at best. Identification of Nixon as the culprit was not a significant issue at trial. Carpenter's statement was neither material under Brady nor did Nixon suffer actual prejudice as a result of its being withheld.

For these reasons, we pretermit the decision whether to grant a COA on the district court's ruling that Nixon procedurally defaulted his Brady claim. And, because we agree with the district

15

court that Nixon cannot demonstrate that the allegedly withheld information was material or prejudicial under Brady, we decline to grant a COA on the merits of the claim.

## F.    Improper Jury Instructions Claim

Nixon asserts that the jury instructions improperly emphasized the requirement of unanimity with regard to mitigating circumstances. The parties dispute whether this claim was raised on direct appeal. The state court held this claim to be procedurally barred on post-conviction review. Nixon, 641 So. 2d at 756. The federal district court held that the claim was procedurally barred because the claim had not been raised on direct appeal and, in the alternative, that the claim had no merit.

Nixon now argues that it is debatable among reasonable jurists that the district court erred in its procedural bar ruling because his claim was actually raised on direct appeal in an Amendment to Petition for Rehearing. He cites Hathorn v. Levon, 457 U.S. 255, 102 S. Ct. 2421, 2424, 72 L. Ed. 2d 824 (1982), for the proposition that new claims raised in rehearing petitions before the Mississippi Supreme Court may be considered by the federal courts. In this case, as in Hathorn, the petition for rehearing was denied by the Mississippi Supreme Court without a published opinion. Hathorn, 457 U.S. at 259, 102 S. Ct. at 2424. In Hathorn, the Supreme Court held that the Mississippi Supreme Court's denial of rehearing without opinion did not constitute the

16

application of an "adequate" state procedural bar because the Court found it "difficult to know whether the Mississippi Supreme Court still adheres to the rule [barring review of questions raised for the first time on rehearing], applying it silently, or whether the court has abandoned the rule." Id. at 263. The state essentially argues that Hathorn is no longer good law because since Hathorn, the Mississippi Supreme Court has repeatedly held that it will not consider arguments raised for the first time on rehearing.

We need not address the question of Hathorn's continued validity on this issue, however, because Hathorn is inapplicable to this case. Here, the procedural bar was not applied "silently" because, unlike in Hathorn, the denial of rehearing was not the final ruling of the state courts on this issue. Rather, on post-conviction review, the Mississippi Supreme Court held the claim to be procedurally barred. Nixon, 641 So. 2d at 756. In his brief before this court, Nixon does not argue that the Mississippi procedural bars are inadequate as applied to his jury instruction claim, nor does he argue that he can demonstrate cause and prejudice sufficiently to overcome the application of any procedural bar on this issue. Nixon's argument against procedural bar has no debatable merit. Since no jurist of reason could disagree with the district court's ruling that the jury instruction

17

claim is procedurally barred, we decline to grant a COA on this claim.[3]

## G.    Surprise Testimony Claim

Nixon contends that the prosecution violated his right to due process because it did not notify him prior to trial that Mr. Tucker and Jimenez, a co-conspirator, would testify that, in the course of committing the crime, Nixon told Mr. Tucker that "the deal's already been made."  The non-disclosure of this statement, Nixon argues, violated the state's pretrial representation to Nixon and prejudiced his defense, which had been predicated on the state's inability to support capital murder charges based on a murder-for-hire theory.

Nixon's surprise testimony claim before this court parallels his assertion before the state courts that the state had violated Mississippi discovery rules.  See Nixon, 533 So. 2d at 1088-91.  The Mississippi Supreme Court held, on direct appeal, that the trial court had followed the proper guidelines under state law to address any discovery violations underlying the contested testimony and that at least some of the statements did not fall within the relevant state discovery rule.  Id.  The district court

---

[3]    Even if we considered the merits of Nixon's jury instruction claim, we would hold that the district court's alternative resolution of the claim on the merits is undebatable.  The jury instructions given by the state trial court did not improperly suggest that the jury needed to find mitigating circumstances unanimously to avoid imposition of the death penalty.  To the contrary, the jury instructions made clear that the jury was not required to find "any mitigating circumstances in order to return a sentence of life imprisonment."  Thus, even if we were to grant the COA on Nixon's procedural claim, it would be unavailing to him because he would not be entitled to any relief on the merits.

18

reviewed the substance of this claim and found that it had no merit.

As Nixon evidently recognizes, a claim that state law has been violated is generally not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475,479-80, 116 L. Ed. 2d 385 (1991). He has attempted to recast his state claim as a federal constitutional claim by citation to Brady. Unfortunately for Nixon, this effort is unavailing. The ostensibly withheld information was neither exculpatory nor useful for impeachment purposes, as Brady requires. Nixon claims only that his trial team was surprised by the use of this powerfully inculpatory testimony. Such testimony, when not useful for impeachment purposes, simply does not fall within the ambit of Brady and its progeny. See Strickler v. Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 1947, 144 L. Ed. 2d 286 (1999) (noting that the Brady obligation applies to "impeachment evidence as well as exculpatory evidence").[4]

More importantly, we agree with the district court that Nixon cannot demonstrate any prejudice arising from the allegedly improper withholding of this information. Jimenez made a post-arrest statement to the police, which was provided to the defense during discovery and clearly implicated Nixon in a murder-for-hire plot. Thus, the defense was on notice that such testimony would

_____

[4] To hold otherwise would be creating an impermissible "new rule" of constitutional procedure. See Gray v. Netherland, 518 U.S. 152, 166-70 (1996).

19

likely be presented at trial. The notion that the additional testimony regarding the "deal" so prejudiced the defense as to rise to the level of a due process violation is untenable.

Jurists of reason cannot disagree with the district court's analysis of this issue, and we decline to grant a COA.

## H. "Especially Heinous, Atrocious or Cruel" Aggravator

Nixon argues that the use of the "especially heinous, atrocious or cruel" aggravator violated his constitutional rights because it is unconstitutionally vague and did not properly narrow the class of individuals who are death-eligible. The state court denied this claim on the merits on direct appeal. Nixon, 533 So. 2d at 1097-98. In Maynard v. Cartwright, 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988), the Supreme Court held that such an aggravator is unconstitutionally vague unless an appropriate limiting instruction is provided. Id. at 364. The jury instruction provided at Nixon's trial defined a capital offense to be "especially heinous, atrocious or cruel," where the offense is "a conscienceless or pitiless crime which is unnecessarily torturous to the victim." This language was borrowed by the Mississippi Supreme Court from a Fifth Circuit opinion. See Clemons v. State, 535 So. 2d 1354, 1363 (Miss. 1988) (quoting Spinkellink v. Wainwright, 578 F.2d 582, 611 (5th Cir. 1978)). The Fifth Circuit, in turn, quoted a Florida Supreme Court opinion. See State v. Dixon, 283 So.2d 1, 9 (Fla. 1973) (internal citation

20

omitted).  The Mississippi Supreme Court quoted the following language from these cases:

> What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies — the conscienceless or pitiless crime which is unnecessarily torturous to the victim.

Clemons, 535 So.2d at 1363 (internal quotation marks and citations omitted).  The United States Supreme Court has at least implicitly endorsed the limiting instruction adopted by the Mississippi Supreme Court, referring to it as "the proper limiting construction of the 'especially heinous' aggravating factor."  Clemons v. Mississippi, 494 U.S. 738, 751, 110 S. Ct. 1441, 1449, 108 L. Ed. 2d 725 (1990) (emphasis added).  In doing so, the Supreme Court cited the page from the Mississippi Supreme Court's opinion in Clemons that contains the above quotation.  Id. (citing Clemons, 535 So. 2d at 1363).  Earlier in Clemons, the Court recited the Mississippi Supreme Court's narrowing language to include "murders that are conscienceless or pitiless and unnecessarily torturous to the victim . . . ."  494 U.S. at 744, 110 S. Ct. at 1446 (internal quotations and citations omitted).

Notwithstanding this reasonably clear guidance in Clemons, Nixon contends that the Supreme Court really meant to require in the narrowing construction that "the actual commission of the capital felony [must be] accompanied by such additional acts as to set the crime apart from the norm of capital felonies."  We

21

cannot accept Nixon's position as reasonably debatable for two reasons. First, the Supreme Court in <u>Clemons</u> never expressly refers to the language on which he relies. Second, as the district court noted, a capital case jury can hardly be expected to know what facts set apart the case before them from "the norm of capital felonies." Such language would improperly invite speculation and references to wholly extraneous events.

Finally, as we noted in <u>Billiot v. Puckett</u>, 135 F.3d 311 (5th Cir. 1998), "a federal habeas court may not grant relief unless the petitioner demonstrates that the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" 135 F.3d at 318 (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 622, 113 S. Ct. 1710, 1714, 123 L. Ed. 2d 353 (1993)). As a result, "a federal habeas court must conduct a harmless error analysis of all trial errors . . . before granting habeas relief." <u>Id.</u> Here, it seems apparent, as it did to the district court, that had the jury been instructed with the additional language sought by Nixon, the testimony adduced at trial regarding the execution-style killing of Mrs. Tucker would have inexorably led the jury to conclude beyond a reasonable doubt that an aggravating circumstance existed.[5] Thus, any error in the jury

---

[5] The Mississippi Supreme Court found that the murder qualified under the "especially heinous" aggravator based upon the following facts adduced at trial:

> Mr. Nixon forcibly entered the house of a couple who feared he was there to kill them; Nixon fired several shots at Mr. Tucker in the presence of Mrs. Tucker; Mrs. Tucker was wrestled to the floor in preparation for her murder; Nixon held a pistol an inch from Mrs.

instruction was harmless at best and the district court's ruling to that effect is not debatable among jurists of reason. COA is not warranted on this claim.

## I.    Prior Violent Felony Claim

Nixon asserts that his prior Texas conviction for rape should not have been introduced before the jury to satisfy the "prior violent felony" aggravating circumstance because he pled guilty to statutory rape, not rape involving the use of force. See Miss. Code Ann. § 99-19-101(5)(b) (indicating that a prior conviction for "another capital offense or of a felony involving the use or threat of violence to the person" is an aggravating circumstance under Mississippi law). Mississippi law requires that the prosecutor prove each aggravating circumstance beyond a reasonable doubt. See Nixon, 533 So. 2d at 1099; Miss. Code Ann. § 99-19-103 (Supp. 1986).

The 1958 Texas indictment to which Nixon pled guilty accused him of "ma[king] an assault and . . . ravish[ing] and hav[ing] carnal knowledge" of a woman under eighteen years of age. The Mississippi Supreme Court held that this conviction qualified as a prior violent felony based on the Texas Court of Criminal Appeals decision in Rodriques v. State, 308 S.W.2d 39 (Tex. Crim.

---

Tucker's head and fired a bullet into her brain; Mrs. Tucker was left to die, but was found within one-half hour bleeding from the mouth and nose and gasping for breath; and Mrs. Tucker struggled to live but died the next day.
Nixon, 533 So. 2d at 1097-98. These facts place the case beyond the norm even of capital felonies.

App. 1957).  <u>Nixon</u>, 533 So. 2d at 1098-99.  The district court independently reviewed the claim and agreed with the Mississippi court, reading <u>Rodrigues</u> to stand for the proposition that because an indictment including the terms "ravish" and "assault" could support a conviction for rape by force as well statutory rape, and because the terms were not necessary to a conviction for statutory rape, Nixon's guilty plea qualified the conviction as a prior violent felony.

The district court relied upon the language in <u>Rodrigues</u> which indicates that under Texas law,

> [t]he word "ravish" implies force and want of consent, and its use in the indictment in connection with the allegation of rape of a female between the ages of 15 and 18 years, as here, renders the indictment sufficient to support a conviction for rape by force as well as for statutory rape.

<u>Rodrigues</u>, 308 S.W.2d at 40.  However, as Nixon points out, the Texas court went on to hold that "[t]he word 'ravish' is not, however, descriptive of the offense, and <u>it is therefore not necessary that force be proven</u> in order to sustain a conviction under such indictment."  <u>Id.</u> (emphasis added).  Indeed, in <u>Rodrigues</u>, the Texas court rejected the state's argument that such an indictment could <u>only</u> support a conviction for rape by force. <u>Id.</u>  As a result, the court held that the defendant should have been permitted to submit a jury instruction indicating that the previous unchaste behavior of the accuser would constitute a valid

24

defense to the indictment — a defense that was only available in statutory rape cases under Texas law at the time.[6]  Id.

In addition to the dispute over the status of this conviction as an aggravator, there is a question whether its being placed before the jury amounted to harmless error.  See Billiott, supra.

Thus, we find it at least debatable among jurists of reason whether a guilty plea to such an indictment can support a jury finding that Nixon had committed a prior violent felony and that such a finding may support the imposition of the death penalty.[7]  Therefore we grant the COA on this claim.

## J.    Double Use Claim

Nixon next argues that the use of the "for pecuniary gain" aggravator was inappropriate in his case because this aggravator duplicates an element of his offense of conviction under Mississippi's capital murder statute.  See Miss. Code Ann. § 97-3-19(2)(d).  The Mississippi Supreme Court on direct appeal held that

---

[6]    The state, in its brief before this court, provides no analysis of this issue and rather simply relies on the district court opinion and asserts that the district court's resolution of the claim is not debatable.

[7]    In holding that this claim is debatable among jurists of reason, we do not suggest, as Nixon proposes, that it is appropriate to examine the Texas state court proceedings related to Nixon's prior conviction or information beyond the fact of conviction, the underlying indictment and Nixon's guilty plea to the indictment.  As the state points out, Mississippi law relating to sentencing enhancements appears to indicate that such an examination is inappropriate because of the potential for extended proceedings to consider the nature of prior offenses.  See Phillips v. State, 421 So. 2d 476, 481 (Miss. 1982) ("In fulfilling its mission to determine whether a prior conviction is constitutionally valid for the purpose of enhancing a defendant's sentence, the trial court must not be placed in position of 'retrying' the prior case.").

25

claim was foreclosed by substantial state and federal court precedent. Nixon, 533 So. 2d at 1097. Like that court and the district court, we hold that Nixon's claim was barred by existing precedent. See Lowenfield v. Phelps, 484 U.S. 231, 246, 108 S. Ct. 546, 555, 98 L. Ed. 2d 568 (1988) (the "fact that the aggravating circumstance duplicated one of the elements of the crime does not make [a death] sentence constitutionally infirm"); Tuilaepa v. California, 512 U.S. 967, 971-72, 114 S. Ct. 2630, 2634-35, 129 L. Ed. 2d 750 (1994) ("To render a defendant eligible for the death penalty in a homicide case, we have indicated that the trier of fact must convict the defendant of murder and find one 'aggravating circumstance' (or its equivalent) at either the guilt or penalty phase." "The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both).") (emphasis added; internal citations omitted). Williams v. Taylor, 529 U.S. 362, 392 n.16, 120 S. Ct. 1495, 1513 n. 16, 146 L. Ed. 2d 389 (2000) . Nixon's purported distinctions of Lowenfield and Tuilaepa are meritless; no COA is warranted.

**K.  Psychological Assistance Claim**

Nixon argues that the trial court's failure to appoint a psychologist on his behalf violated his constitutional rights under Ake v. Oklahoma, 470 U.S. at 83, 105 S. Ct. at 1096, and the due process clause. The Mississippi Supreme Court denied this claim on the merits on direct appeal. Nixon, 533 So. 2d at 1095-97. The

26

federal district court on habeas rejected the claim on the merits holding that Nixon had not even made a preliminary showing or presented any evidence to the trial court, which suggested that an expert would have provided any useful information in this case.

We have read <u>Ake</u> to impose

> a constitutional obligation [upon the state] to provide an indigent criminal defendant with access to the assistance of a psychiatrist in the following two circumstances: (1) "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial" and (2) "in the context of a capital sentencing proceeding, when the State presents psychiatric evidence of the defendant's future dangerousness."

<u>White v. Johnson</u>, 153 F.3d 197, 200 (5th Cir. 1998) (quoting <u>Ake</u>, 470 U.S. at 83). Nixon presented no evidence to the trial court that his sanity at the time of the offense would be a significant factor at trial nor did the state present psychiatric evidence at the sentencing phase.

Nixon posits more broadly that he sought expert assistance in order to obtain evidence in support of and to establish mitigating circumstances at the sentencing phase. As shown, this request does not state a valid claim under <u>Ake</u>, as interpreted by this court. <u>White</u>, 153 F.3d at 204. Moreover, as there is no Supreme Court authority enunciating a capital defendant's constitutional right to obtain court-appointed psychiatric counsel <u>outside</u> the standards of <u>Ake</u>, Nixon in effect asks this court impermissibly to create a "new rule" of law, contrary to <u>Teague v. Lane</u>, 489 U.S. 288, 109 S. Ct. 1060, 103

27

L. Ed. 2d 334 (1989). The district court's resolution of this issue is not reasonably debatable for purposes of granting a COA.

**L. Claim for Ineffective Counsel at Motion for New Trial**

Finally, Nixon claims that he was denied his Sixth Amendment right to counsel during consideration of his motion for a new trial. When this issue was raised on direct appeal, the Mississippi Supreme Court, after noting that Nixon had no absolute right to particular counsel because of the need to maintain an orderly trial process, evaluated and found Nixon's claim wanting as an ineffective assistance claim under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Nixon, 533 So. 2d at 1101-02. The district court denied Nixon's claim on the merits, holding that he had demonstrated no conflict of interest and that he was never deprived of the right to counsel.

On the morning of the hearing on his motion for a new trial, Nixon attempted to dismiss his trial counsel and obtain new representation. Nixon based his argument for new counsel on an alleged conflict of interest that arose when his trial attorney brought his co-defendant's lawyer to meet with Nixon following his conviction, and prior to the hearing on the new trial motion. Nixon's trial lawyer, aware that his client did not want his services, repeatedly asked to be excused from his representation. The trial judge, ostensibly concerned that Nixon was attempting to delay the proceedings, denied Nixon's motion. However, upon

28

further consideration, the trial judge placed Nixon's trial counsel under oath and began questioning him about the alleged conflict. After hearing from both Nixon's trial counsel and his co-defendant's counsel, the trial judge determined that no conflict existed and that Nixon's motion for new counsel would be denied. The motion for a new trial was then argued by Nixon's trial counsel.

Nixon now asserts that he was denied his Sixth Amendment right to counsel because an actual conflict existed between Nixon and his counsel, and he was completely deprived of counsel while his lawyer was discussing the alleged conflict under oath before the state trial court.  This issue is not reasonably debatable: the district court and the state courts were clearly correct in holding that there was no actual conflict that would have rendered ineffective Nixon's trial attorney's representation of him during the new trial motion.  There is no basis for Nixon's claim that his lawyer had an a priori conflict of interest for bringing a co-defendant's lawyer to meet with Nixon post-conviction.  In <u>Bullock v. Whitley</u>, 53 F.3d 697 (5th Cir. 1995), we held that there was no constitutional conflict of interest where a co-defendant's attorney took the lead in obtaining information from the defendant on behalf of the defendant's lawyer prior to trial.  53 F.3d at 702.  Setting up a post-conviction meeting between the defendant and a co-defendant's attorney could not create a conflict of interest, particularly when, as here, the state trial court found that <u>Nixon</u>

29

himself requested the meeting.  In addition, it can hardly be contended that Nixon's trial attorney was testifying against his client's interest when the state judge questioned him regarding the conflict of interest.  Given that <u>both</u> Nixon and his attorney had asked for his removal, the attorney was essentially advocating Nixon's position at all times.

Contrary to his assertions, Nixon was never deprived of his right to counsel prior to or during the motion for a new trial.  Nixon had counsel — his trial attorney.  It is true that Nixon and the attorney were unhappy about the continued representation, but we have repeatedly stated that "[t]he Sixth Amendment . . . does not guarantee an absolute right to the counsel of one's choice." <u>United States v. Paternostro</u>, 966 F.2d 907, 912 (5th Cir. 1992).  Nixon cites no authority for the argument that he was deprived of his right to counsel while the judge was questioning his lawyer regarding the alleged conflict of interest.  Further, the fact that dissenting judges on the Mississippi Supreme Court would have found a conflict of interest or would have presumed prejudice to Nixon from the circumstances does not automatically prove that reasonable jurists could disagree.  With due respect, the dissenting justices' position does not follow this court's interpretation of <u>Strickland</u> and <u>Cuyler v. Sullivan</u>, 446 U.S. 335 (1980).  The question before this court is whether reasonable jurists could debate whether the state court's adjudication of the claim was "reasonable" and whether the district court's assessment of the constitutional issue

30

is debatable or wrong.  On the contrary, were we to hold as Nixon desires, we would be creating a "new rule" of constitutional law, a course barred to us by Teague.  See Wiley, 969 F.2d at 95-98.  As a result, a COA is unwarranted.

### III.  CONCLUSION

For the reasons discussed above, Nixon's application for a certificate of appealability is **GRANTED IN PART** and **DENIED IN PART**.  The certificate has been granted on Nixon's Batson/Powers and prior violent felony claims, but the Batson/Powers claim fails on the merits.  Further briefing is needed on the prior violent felony claim.  As to all other claims treated in this opinion, COA is **DENIED**.

31